UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:    Attorneys Present for Defendants:

Not Present              Not Present

**Proceedings:**   **[IN CHAMBERS] Order Regarding Motion for Summary Judgment**

    Defendants/Counterclaimants Palm communities, f/k/a Palm Desert Development Company ("Palm") and Housing Corporation of America ("HCA") (collectively, the "General Partners") move for summary judgment dismissing Count One of the First Amended Complaint ("FAC") and partial summary judgment on Counts I and II of the Counterclaim. See Mot., Dkt. No. 59, 1. Defendant Palm also moves for summary judgment on Counts Two and Three of the FAC. Mot., 2. Plaintiffs/Counter-Defendants Centerline Housing Partnership I, L.P. – Series 2, f/k/a Related Capital Housing Partnership I, L.P. – Series 2 ("Centerline"), RCHP SLP I L.P. – Series 2 ("RCHP") (together with Centerline, the "Limited Partners") and Alden Torch Financial, LLC ("ATF) (together with the Limited Partners, "Alden Torch") oppose the motion. See Opp'n, Dkt. No. 76. The General Partners filed a reply. See Reply, Dkt. No. 83.

    For the following reasons, the Court **GRANTS** the motion in part and **DENIES** it in part.

**I. BACKGROUND**

**A.   Factual Background**

    This matter involves the Fredrick and 52 II L.P. (the "Partnership"). The Partnership includes Palm as the Administrative General Partner, HCA as the Managing General Partner of the Partnership, Centerline as the Investor Limited Partner, and RCHP as the Special Limited Partner. Plaintiffs/Counter-Defendants' Statement of Genuine Disputes of Material Fact ("SDF"), Dkt. 76-1 ¶¶ 1–4. Centerline's affiliate and predecessor-in-interest, RCC Credit Facility, LLC, and RCHP's affiliate and predecessor-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-CV-00107-JVS (JDEx)     Date  November 1, 2021

Title  Centerline Housing Partnership v. Palm Communities

in-interest, Related Direct SLP LLC, were originally admitted to the Partnership as the Investor Limited Partner and Special Limited Partner, respectively.  Id. ¶ 5.  "In 2015 or at a later date," Alden Torch came to own, control, and manage, the Limited Partners.  Id. ¶ 6.  The Partnership and the rights and obligations of the General Partners and Limited Partners in relation to their roles as partners in the Partnership are governed by the Amended and Restated Agreement of Limited Partnership, as amended, dated March 1, 2002 (the "LPA").  Id. ¶ 7.  Under the LPA, "[t]he business of the Partnership shall be limited to the construction, ownership, financing, operation and disposition fo the Apartment Complex."  Id. ¶ 8.

The Partnership owns Orchard Villas II, a qualified low-income housing project in Coachella, California (the "Property").  Id. ¶ 9.  The Property makes up substantially all of the Partnership's assets.  Id. ¶ 10.  The Partnership and Property are managed in a manner to participate in the Low-Income Housing Tax Credit ("LIHTC") program, governed by 26 U.S.C. § 42 ("Section 42").  Id. ¶ 11.  The LIHTC program provides tax credits to eligible low-income projects.  Id. ¶ 12.  The tax credits are collected over a ten-year period known as the "Credit Period."  Id. ¶ 13.  Pursuant to Section 42, the Property was subject to a 15-year compliance period ending on December 31, 2017.  Id. ¶ 14.

When the Partnership was executed, the Partnership, Palm, and HCA also entered into an Option Agreement and Right of First Refusal Agreement ("ROFR Agreement"). Id. ¶ 16.  The Partnership Agreement refers to the Options and ROFR Agreement.  Id. ¶ 17.  The ROFR Agreement grants HCA a "Right of First Refusal" that is triggered if, during the 4-year option term, the Partnership "shall desire to accept a bona fide offer from an unrelated third party to purchase the Property."  Blake Decl., Ex. B ("Option and ROFT Agreement") § 5.  The LPA further provides that the Property may not be sold without RCHP's written consent.  LPA § 5.4.A.  The Option and ROFR Agreement requires HCA to pay "an amount sufficient to (A) pay all liabilities of the Owner upon Owner's termination and liquidation as projected to occur immediately following the sale pursuant to the Option; (B) pay any deficiency in the federal and/or state tax credits projected to be received by the limited partners unless otherwise recovered by the limited partners; and (C) distribute to the partners of Owner, proceeds equal to the federal, state and local taxes projected thereof as a result of the sale pursuant to Section 9.2B of [the LPA]."  Option and ROFT Agreement §§ 4(a)(i), 5. The Purchase Price set forth in the Option and ROFT Agreement is fixed and is presently below market.  SDF ¶ 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

Centerline contributed approximately $7,542,000 in capital to the Partnership, and that amount was determined in part based on the amount of tax credits that were expected to be available to the Partnership. Id. ¶ 23. The Partnership expected to receive $9,458,960 in tax credits. Id. ¶ 24. All of the tax credits the Partnership received were intended to be allocated to Centerline. Id. ¶ 25. Centerline is also entitled to 99.98% of the Partnership's operating losses. Id. ¶ 26. According to the LPA, the General Partners have authority over the management and operation of the Property, subject to limitations and restrictions. Id. ¶ 28. The LPA provides that "[Palm] . . . is hereby authorized to sell . . . all or substantially all of the assets of the Partnership; provided, however, that the terms of any such sale . . . must receive the Consent of the [RCHP] before such transaction shall be binding on the Partnership." LPA § 5.4.A (emphasis in original).

On December 9, 2020, Mr. Mauricio Rivero ("Rivero") of Foster Hamilton Affordable contacted Mr. Danavon Horn ("Horn"), President of Palm, on behalf of Affordable Housing for California Communities ("AHCC"). SDF ¶ 32. AHCC is a California non-profit entity that identifies and enters into contracts to acquire affordable housing. Id. ¶ 35. In the past five years, AHCC has made approximately 20 offers to purchase affordable housing, six of which were accepted and resulted in a sale of the property. Id. ¶ 36. Rivero is a direct report of Mr. Ulysses Lepe ("Lepe"), the head director in charge of AHCC and the affordable housing side of Foster Hamilton Affordable. Id. ¶¶ 38–39. Neither Mr. Lepe, AHCC, nor Foster Hamilton Affordable have any relation, affiliation, or connection with Palm or HCA. Id. ¶ 41. In fact, prior to December 2020, Mr. Lepe and AHCC did not know anything about Palm or HCA and had never spoken to anyone at either firm. Id. ¶¶ 42–43. Foster Hamilton Affordable compiles information mined from publicly available sources to identify potential affordable housing properties that are beyond the close of the LIHTC compliance period for AHCC to purchase. Id. ¶ 45. At Lepe's direction, Rivero cold calls owners of the identified properties and asks whether the owner is willing to sell. Id. ¶ 46. When an owner is interested in entertaining an offer, AHCC puts together and presents an offer. Id. ¶ 47.

The Property and a related property known as Orchard Villas I were on Foster Hamilton Affordable's list of identified properties. Id. ¶¶ 48–49. Rivero contacted Palm because it was next on his list of identified properties. Id. ¶ 52. On or around December 17, 2020, Rivero reached out again to Palm in a follow-up email with the subject line, "Strong Interest in 'Orchard Villas Apartments," requesting financial information. Id. ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-CV-00107-JVS (JDEx)                          Date  November 1, 2021

Title  Centerline Housing Partnership v. Palm Communities

53. On December 19, 2020, Palm sent Rivero rent rolls and the financial documents reflecting the prior twelve months of operations. Id. ¶ 54. Lepe came up with the pricing and terms for for two purchase offers—one for the Property and one for Orchard Villas I. Id. ¶ 56. On December 22, 2020, Rivero, on behalf of AHCC, sent Palm the offers dated December 21, 2020. Id. ¶ 55. On January 11, 2021, Rivero, on behalf of AHCC, sent an updated offer for the Property with an increased purchase price and shorter period of time before some earnest money would become non-refundable (the "Purchase Offer"). Id. ¶ 57. Rivero also sent an updated offer to purchase Orchard Villas I. Id. ¶ 58. Lepe testified that he increased the offer price and revised the terms so that AHCC could be more "aggressive" with its offer because AHCC was "very interested in purchasing the [P]roperty" and was concerned about another bidder being considered. Id. ¶ 60. Lepe and AHCC did not know about the ROFR when making the Purchase Offer and AHCC made the offer in good faith. Id. ¶ 62–63. The Purchase Offer includes the Property's parcel number. Id. ¶ 67.

On January 11, 2021, Palm sent HCA a Notice of Proposed Offer ("ROFR Notice"), attaching a copy of the Purchase Offer and purporting to express a desire on behalf of the Partnership to accept the offer. Id. ¶ 69. The ROFR Notice stated that HCA had 45 days to exercise its ROFR. Id. ¶ 70. On January 12, 2021, a copy of the ROFR Notice was sent to ATF on behalf of the limited partners. Id. ¶ 71. On February 23, 2021, HCA sent a letter to the Partnership purporting to exercise its ROFR. Id. ¶ 72.

**B.    Procedural Background**

On January 19, 2021, the Limited Partners filed this action for declaratory relief and requested a judicial determination that: (1) "HCA's Section 42(i)(7) ROFR has not been triggered and may not be exercised unless and until RCHP consents to a sale of the [Property]" and (2) "[Palm and HCA] cannot refinance the Partnership's debt without RCHP's prior written consent." Compl., Dkt. No. 1 ¶¶75, 85. On March 9, 2021, the General Partners asserted counterclaims for declaratory relief, Dkt. No. 17 ¶¶ 106–20, and a separate counterclaim against the Limited Partners for breach of the LPA and implied covenant of good faith and fair dealing, id. ¶¶ 121–38, and a counterclaim against Alden Torch for tortious interference with contract, id. ¶¶ 139–48. On April 30, 2021, the Limited Partners filed an Amended Complaint asserting an additional claim against Palm for breach of fiduciary duty. First Amended Complaint ("FAC"), Dkt. No. 54 ¶¶ 92–95.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

On May 3, 2021, the General Partners filed a Motion to Stay Discovery pending the outcome of this Motion for Summary Judgment. Dkt. No. 55. The General Partners filed this Motion on May 13, 2021. Dkt. No. 59. On May 26, 2021, this Court rejected the General Partners' Motion to Stay Discovery. Dkt. No. 64, 7.

## II. Legal Standard

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.[1]

The moving party has the initial burden of establishing the absence of a material fact for trial. Anderson, 477 U.S. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

---

[1] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

### III. DISCUSSION

**A.   Right of First Refusal**

The General Partners ask this Court, pursuant to Count I of the Counterclaim, for a declaration providing: (1) the Purchase Offer is a bona fide offer from an unrelated third party (Counterclaim, Dkt. No. 17, ¶ 120(e)); (2) Palm has the authority under the LPA to express a desire to accept the Purchase Offer without RCHP's consent (id. ¶ 120(c)); and (3) the ROFR was triggered (id. ¶ 120(d), (f)) and HCA has exercised it (SDF ¶ 8). See Mot., Dkt. 59, at 22.

The parties agree that the ROFR is only triggered if the Partnership "shall desire to accept a bona fide offer from an unrelated third party to purchase the Property." Blake Decl., Ex. B ("Option and ROFT Agreement") § 5. So, the instant dispute comes down to two key issues. First, whether AHCC's purchase offer constituted a "bona fide offer" sufficient to trigger HCA's ROFR. And second, whether the ROFR provision in the LPA required the Limited Partners's consent to sell the Property.

  *1.    Whether AHCC's Purchase Offer was a Bona Fide Offer*

The General Partners argue that AHCC"s purchase offer was a bona fide third party offer that triggered their ROFR. Mot., Dkt. No. 59, 13. However, Alden Torch argues that summary judgment should not be granted on this issue because there are disputes as to whether the offer was bona fide. Opp'n, Dkt. No. 76, 22.

A bona fide offer is one that is made "in good faith; without fraud or deceit" and is "sincere" and "genuine." Senior Hous. Assistance Group v. AMTAX Holdings 260 LLC, 2019 WL 1417299, at *10 (W.D. Wash. Mar. 29, 2019) (quoting Black's Law Dictionary).

The parties agree that Lepe and AHCC made the Purchase Offer in good faith. SDF ¶ 63. Lepe performed his "standard due diligence" before extending the Purchase Offer and intended for it to be "aggressive" because AHCC was "very interested in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

purchasing the [P]roperty." Id. ¶¶ 60, 65. Further, it is undisputed that Lepe and AHCC were not aware of HCA's ROFR when making the purchase offer. Id. ¶ 62. The General Partners contend that this is sufficient to find the offer bona fide. Mot., Dkt. 83, 8–10.

However, despite these facts, Alden Torch argues there is a genuine dispute as to whether the Purchase Offer was bona fide because, it claims, "Palm induced AHCC to act unwittingly as a straw buyer for the sole purpose of triggering HCA's ROFR, thereby allowing Palm to force HCA to exercise its ROFR and obtain the Property for substantially less than fair-market value pursuant to the AGP." Opp'n, Dkt. 76, 23. Palm and HCA have an "Agreement of General Partners" ("AGP") that gives for-profit developer Palm the benefit of non-profit HCA's below-market Section 42(i)(7) ROFR. Def.'s Response to Pls./Counter-Defs.' Additional Material Facts ("RAMF"), Dkt. No. 83-1, ¶ 16. Congress reserved the below-market Section 42(i)(7) ROFR for non-profits. Thus, Alden Torch claims that the AGP undermines the bona fide nature of the offer so that it did not trigger the ROFR. Id. On the other hand, the General Partners argue that "determining whether an offer is bona fide requires analyzing only *the offeror's* intention and motivation." Def.'s Req. for Hearing, Dkt. 91, at 2. And thus, only AHCC's intent and good faith state-of-mind are relevant to the bona fide nature of the offer, not Palm's or HCA's. Id. In support of this contention, the General Partners point to *Raytheon Co. v. Rheem Mfg. Co.*, in which the Ninth Circuit agreed that because the term "bona fide" modified the word "offer." the analysis turned on whether the offer was a real offer. 322 F.2d 173, 177–78 (9th Cir. 1963). The Court agrees that the bona fide nature of an offer depends on the offeror's intent and motivation. As such, an induced offer may or may not be bona fide. For instance, there are situations when an induced offer could result in the offeror's intent and motivation becoming such that an offer is not bona fide. Thus, determining whether an induced offer is bona fide or not requires a fact-intensive inquiry. Here, the Court agrees with Alden Torch that the relevant facts are sufficient to raise a triable issue as to whether or not the offer was bona fide.

In a similar case, a district court in Washington found that offers "were not bona fide as they were solicited by [the General Partners] in an attempt to trigger [the non-profit developer's] ROFR and compel a sale of [the property] at below market prices, not because [the non-profit developer] was genuinely interested in selling [the properties] to a third party." SHAG v. AMTAX Holdings 260, LLC, 2019 WL 1417299, at *1, *11. Here, Alden Torch has presented evidence suggesting that Mr. Rivero contacted Mr. Horn regarding Palm's interest in selling properties in Palm's portfolio other than the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

Property, and Mr. Horn was the one who brought up Palm's interest in selling the Property. See SUF ¶ 51; Pettit Decl., Ex. X at 27:24–28:2, 29:16–21, 65:25–66:1; Pettit Decl., Ex. W at 87:18–88:12. Further, Alden Torch argues that "AHCC did not perform adequate due diligence" and that "[i]n partciular, no AHCC representative visited the Property in person or conducted any due diligence regarding its physical condition prior to submitting the offer to purchase the Property." SUF 47; Pettit Decl., Ex. W, at 89:22–90:8; Ex. X, at 33:19–22. These facts further raise a triable issue as to whether the offer was bona fide.

The factual record here could permit a fact-finder to find that the offer was not bona fide. Thus, the Court cannot determine at this stage whether the offer was or was not bona fide. The Court thus DENIES the General Partners' motion for summary judgment with respect to whether the offer was bona fide (Counterclaim, ¶ 120(e)).

> 2. *Whether the ROFR Provision in the LPA Required the Limited Partners's Consent to Sell the Property*

The second issue is whether the General Partners have the authority to accept the third-party offer on behalf of the partnership, without the Limited Partners' consent. The Limited Partners argue that the General Partners do not have this authority and that the Special Limited Partner must consent before the ROFR is triggered. The General Partners move this Court to grant summary judgment declaring that such consent is not required.

"Under California Law, the interpretation of contract language is a question of law." Atel Fin. Corp. v. Quaker Coal Co., 321 F.3d 924, 925–26 (9th Cir. 2003) (internal citation omitted). In California, courts must interpret contracts to give effect to the mutual intent of the parties. Bank of the West v. Super. Ct., 2 Cal. 4th 1254, 1256 (1992) (citing Cal. Civ. Code § 1636). The parties' mutual intent is determined by several factors, including: (1) the language of the contract; (2) the surrounding circumstances in which the parties entered the contract; and (3) the subsequent conduct of the parties. Morey v. Vannucci, 54 Cal. App. 4th 904, 912 (1998).

California courts have established a two-step process for interpreting contracts. Curry v. Moody, 40 Cal. App. 4th 1547, 1552 (1995). First, the court must determine whether the contract is ambiguous. Id. Contracts are ambiguous when "reasonably

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

susceptible" to different meanings.  Id.  At this step, the court must provisionally receive extrinsic evidence regarding the meaning of the contract.  Id.  If the contract is ambiguous when viewed in light of the extrinsic evidence, courts move to the second step of analysis.  Id.  If, however, there is no ambiguity, the court must apply the clear meaning of the contract.  Bank of the West, 2 Cal. 4th at 1264 ("If contractual language is clear and explicit, it governs.").  At the second step, the court must then interpret the contract.  Curry, 40 Cal App. 4th at 1552.  When interpreting the contract, the court admits all extrinsic evidence relevant to ambiguity.  Id.  If there is no such evidence, or the evidence does not raise any genuine issue of material fact, the interpretation of the contract is a matter of law.  ASP Props., 133 Cal. App. 4th at 1267.  But, when the extrinsic evidence is in conflict, summary judgement is not appropriate because resolution of the conflicting evidence is a question of fact.  WYDA Associates v. Merner, 42 Cal. App. 4th 1702, 1710 (1996).

  Here, the LPA and ROFR are not ambiguous.  The LPA states that "the Administrative General Partner . . . is hereby authorized to sell . . . all or substantially all of the assets of the Partnership' provided, however, that the terms of any such sale . . . must receive the Consent of the Special Limited Partner **before such transaction shall be binding on the Partnership**."  LPA § 5.4A (underlining in original, bolding added).  The plain language of the contract provides only that the Special Limited Partner must consent to the sale before it "shall be binding on the Partnership."  The ROFR Agreement only requires that the Partnership "desire to accept" an offer to purchase the property.  Desiring to accept does not bind the partnership.  Thus, it does not require the Special Limited Partner's consent under § 5.4A.  See Homeowner's Rehab, 478 Mass. at 760–761 ("To be sure, the partnership could not consummate a sale to a third party without the consent of the special limited partner, but that does not mean that the special limited partner must consent to the terms of an *offer* before the disposition notice can be issued.") (emphasis in original).

  The Massachusetts Supreme Court, addressing the same question with regards to a similar agreement explained,

> [The partnership agreement] states only that the special limited partner must consent to the terms of a sale "before such transaction shall be binding on the Partnership."  As stated, the decision to accept a third-party offer does not itself constitute an acceptance of the offer.  Thus, the mere issuance of a disposition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

notice does not bind the partnership to sell to the third party or even accept its offer if the nonprofit developer were for some reason to fail to exercise its right of first refusal.

Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P., 479 Mass. 741, 759 (2018). The Massachusetts Supreme Court partially based this conclusion on the fact that the partnership agreement "specifically recognize[d] the possibility that the partnership [would] not consummate the sale" by stating that if the nonprofit developer did not exercise its ROFR, the partnership "*may* thereupon consummate the sale to the [third party] upon the terms of the offer." (emphasis in original). Similarly, the LPR here states that if HCA does not exercise its ROFR, the Partnership "will be free to sell the Property on substantially the terms set forth in the notice." ROFR Agreement § 5.

Alden Torch argues that Homeowner's Rehab is inapposite because in that case, the special limited partner's consent was required "except for a sale pursuant to the Option Agreement." Homeowner's Rehab, Inc., 479 Mass. at 760 (quoting provision). So, in Alden Torch's view, the absence of such an exclusion here "strongly suggests that it was deliberately omitted to ensure that the Right of First Refusal Agreement *would be* subject to the consent provision." Id. at 5. However, the Homeowner's Rehab exclusion only provided that the special limited partner's consent was necessary for a sale to become ***binding*** on the partnership, "except for a sale pursuant to the Option Agreement." Id. at 747. In other words, the special limited partner's consent was not necessary for a sale pursuant to the Option Agreement *to become binding* on the partnership. An example of such a sale that would be excluded by the provision is one "where the nonprofit developer has exercised its right of first refusal." Id. at 760. The exclusion had nothing to do with whether the special limited partner's consent was necessary for the partnership to express its desire to accept an offer from a third party. Further, like here, the option agreement in Homeowner's Rehab, was distinct from the partnership agreement. Id. at 746. However, unlike here, the nonprofit developer in Homeowner's Rehab was not a party to the partnership agreement. Id. at 745–46. Thus, as the General Partners explain in their Response to Alden Torch's Hearing Request, "a sale to the nonprofit developer pursuant to the right of first refusal under the option agreement would be a third-party sale under the partnership agreement, arguably prompting the inclusion of an exclusion in the partnership agreement." Dkt. 93, at 2. "Here, in contrast, HCA is a party to the LPA and the terms of any sale under the ROFR agreement, (e.g., the price and closing date) have been acknowledged under (and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

incorporated into) the LPA, and thus RCHP *has already consented* to a sale to HCA pursuant to the [Right of First Refusal] terms." Id. (citing Dkt. No. 76-1, ¶ 17; LPA (Dkt. No. 1-1) at Art. I (definition of "Purchase Option"), § 5.4.B(i) (incorporation of ROFR Agreement); ROFR Agreement (Dkt. No. 1-2) at §§ 4–6)). Thus, here, additional consent would be redundant. The absence of such an exclusion here does not affect the requirements for the Partnership to express a desire to accept an offer, and thus trigger the Right of First Refusal. It only affects the requirements for a sale to become binding on the partnership.

Further, Alden Torch argues that Section 5.4A of the Partnership Agreement is ambiguous based on extrinsic evidence. In evaluating this Motion, the Court does not weigh this evidence or analyze its credibility. Instead, the Court only looks at this evidence to determine whether there is sufficient contradictory evidence to survive summary judgment. Metro. Life Ins. Co. v. Trujillo, 2020 WL 5946079, at *3 (C.D. Cal. Oct. 7, 2020) (explaining that "there must be more than a mere scintilla of contradictory evidence to survive summary judgment."). The evidence Alden Torch presents does not show that the contract is "reasonably susceptible" to the interpretation Alden Torch urges—that the Special Limited Partner's consent is required to trigger the ROFR. Nor does this evidence raise any genuine issue of material fact. Alden Torch argues that "Palm's contemporaneous conduct and communications belie its litigation position that RCHP's consent is not required to trigger HCA's ROFR." Opp'n, Dkt. No. 76, at 20. Alden Torch presents three pieces of extrinsic evidence to support its assertion that Section 5.4A is ambiguous: (1) prior negotiations between Palm and Alden Torch; (2) a 2018 written exchange between a Palm employee and Alden Torch; and (3) a 2019 email from Palm's President stating that RCHP "does have to accept the offer."

First, Alden Torch states that "Palm and Alden Torch negotiated transactions in connection with LIHTC partnerships containing disposition provisions similar to those at issue here, yet prior to January 2021 Palm *never* claimed that the limited partner interests should be valued based on the assumption that the property would be acquired at the Section 42(i)(7) price." Id. This does not raise an issue of material fact as to the meaning of the present agreement. Although those past provisions may have been "similar to those at issue here," the surrounding facts were not the same. For example, they were not related to the same properties. Also, Palm's negotiating position in these deals sheds little light on the mutual intent of the parties at the time of contracting here. See Block v. eBay, Inc., 747 F.3d 1135, 1138 (9th Cir. 2014) ("A contract must be so interpreted as to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

give effect to the mutual intention of the parties as it existed at the time of contracting[.]"). Thus, Palm's negotiating position with regards to those separate deals are not sufficient to render the provision ambiguous.

Second, Alden points to an email from Mr. Halter, a Palm representative to the Limited Partners on April 12, 2018 stating in part, "HCA is interested in exercising their right of first refusal should Palm, HCA and the Special Limited Partner [RCHP] collectively agree to a sale." RAMF, Dkt. No. 83-1, 14 ¶ 26. However, the General Partners argue that this was "not an agreement with Alden Torch's misplaced interpretation of the LPA and ROFR Agreement," but rather an attempt to be "agreeable" as "part of a negotiation." Reply, Dkt. 83, 22; Davenport Reply Decl., Ex. P at 127:8–19. The General Partners present sworn declarations supporting these assertions and Alden Torch has not provided evidence to contradict them. See id. Further, this statement was made nearly 20 years after the contracts were negotiated and entered, and thus hardly weighs on the mutual intent of the parties as it existed at the time of contracting.

Third, Alden Torch relies on a February 2019 internal email from Mr. Horn, a Palm representative to HCA that attached the Option and ROFR Agreement and stated: "I was mistaken about the acceptance of the offer by the [Special Limited Partner]. The [Special Limited Partner] does have to accept the offer. So back to the drawing boards." However, Mr. Horn is not an attorney and later explained that he "was relying on Alden Torch's position as being accurate, and after further research, . . . [he] realized that [he] didn't need their permission to desire." Davenport Reply Decl., Ex. A at 152:3–23. Further, neither of these communications show the original parties' intent or understanding nor do they undermine the unambiguous nature of Section 5.4.A. Alden Torch has not shown that Section 5.4.A could plausibly be interpreted to mean that the Special Limited Partner's permission is required for the partnership to express its desire to accept an offer. Together, this evidence is not sufficient to raise an issue of material fact as to the meaning of the agreement.

The Court thus GRANTS summary judgment on this issue and declares that the Administrative General Partner has the power under the Partnership Agreement to express, on behalf of the Partnership, a desire to sell the Apartment Complex, whereby the Special LP's consent is only necessary for a sale transaction to become binding on the Partnership (Counterclaim, ¶ 120(c)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

### B. Breach of Fiduciary Duty

The General Partners ask this Court to grant summary judgment dismissing Count Three of the FAC for breach of fiduciary duty.

A claim for breach of fiduciary duty requires "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." Pierce v. Lyman, 1 Cal. App. 4th 1093, 1102 (1991). "The absence of any one of these elements is fatal to the cause of action." Id. Here, Alden Torch claims that Palm, as the Administrative General Partner, owes the Partnership fiduciary duties of loyalty, care, and good faith and fair dealing. FAC ¶ 93. Alden Torch argues that Palm breached these duties by: (1) prompting AHCC to submit its Purchase Offer for the purpose of trigger HCA's ROFR; (2) failing to engage AHCC in good faith negotiations for a more favorable sales price for the Property; and (3) failing to consider whether accepting the Purchase Offer was in the best interests of the Partnership. Id. ¶ 94.

As discussed above, Alden Torch has raises a triable issue of material fact as to whether the General Partners induced AHCC's Purchase Offer for the purpose of triggering HCA's ROFR. Because this claim is also based on that allegation, the Court DENIES the General Partners' motion for summary judgment on the Limited Partners' fiduciary duty claims.

### C. Breach of Contract

The General Partners move this Court for partial summary judgment on Count II of the Counterclaim because, they argue, "the Limited Partners have breached the LPA by preventing the sale of the Property pursuant to the ROFR Agreement." Mot., Dkt. No. 59, 22. Accordingly, the General Partners ask the Court to order specific performance directing the Partnership to transfer the Property to HCA pursuant to the Right of First Refusal Agreement. Id.

This claim depends on a finding that the Right of First Refusal was in fact triggered. For the reasons discussed above, this is an issue that cannot be resolved on summary judgment. Accordingly, the Court DENIES the General Partners' motion for

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | November 1, 2021 |
| Title | <u>Centerline Housing Partnership v. Palm Communities</u> | | |

summary judgment on their breach of contact claim.

### IV. CONCLUSION

    For the foregoing reasons, th motion is **DENIED** in part and **GRANTED** in part. The Court finds that oral argument would not be helpful in this matter. Fed R. Civ. P. 78; L.R. 7-15.

    **IT IS SO ORDERED.**

                                                                                                          : 0

                                              Initials of Preparer    lmb