**KING & SPALDING LLP**
ERIC S. PETTIT (SBN 234657)
  *epettit@kslaw.com*
CRAIG H. BESSENGER (SBN 245787)
  *cbessenger@kslaw.com*
JEFFREY M. HAMMER (SBN 264232)
  *jhammer@kslaw.com*
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Tel: (213) 443-4355
Fax: (213) 443-4310

Attorneys for Plaintiffs/Counter-
Defendants CENTERLINE HOUSING
PARTNERSHIP I, L.P. – SERIES 2 and
RCHP SLP I L.P. – SERIES 2, and
Counter-Defendant ALDEN TORCH
FINANCIAL LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| CENTERLINE HOUSING PARTNERSHIP I, L.P. – SERIES 2, f/k/a RELATED CAPITAL HOUSING PARTNERSHIP I, L.P. – SERIES 2, a Delaware limited partnership; and RCHP SLP I L.P. – SERIES 2, a Delaware limited partnership, <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> PALM COMMUNITIES, f/k/a PALM DESERT DEVELOPMENT COMPANY, a California corporation; and HOUSING CORPORATION OF AMERICA, a Utah non-profit corporation, <br><br> Defendants/Counterclaimants, <br><br> v. <br><br> ALDEN TORCH FINANCIAL, LLC, a Delaware limited liability company, <br><br> Counter-Defendant. | Case No. 8:21-CV-00107-JVS-JDE <br><br> **PLAINTIFFS/COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: December 13, 2021 <br> Time: 1:30 p.m. <br> Ctrm: 10C <br> Judge: Hon. James V. Selna <br><br> **[Statement of Uncontroverted Facts and Conclusions of Law; Declarations of Christopher Blake and Eric S. Pettit and Exhibits thereto filed concurrently]** |

1  **TO THE HONORABLE COURT, ALL PARTIES, AND ALL**

2  **ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that on December 13,

3  2021 at 1:30 p.m. in Courtroom 10C of the above-entitled Court, located at 411 W.

4  Fourth St., Santa Ana, CA 92701, Plaintiffs/Counter-Defendants Centerline Housing

5  Partnership I, L.P. – Series 2, f/k/a Related Capital Housing Partnership I, L.P. – Series

6  2 ("Centerline") and RCHP SLP I L.P. – Series 2 ("RCHP" and, collectively with

7  Centerline, the "Limited Partners") and Counter-Defendant Alden Torch Financial

8  LLC ("Alden Torch" and, collectively with the Limited Partners, "Plaintiffs/Counter-

9  Defendants") will, and hereby do, move for partial summary judgment with respect to

10  the Limited Partners' claims that:

11      (1)    The below-market right of first refusal ("ROFR") that

12               Defendant/Counterclaimant Housing Corporation of America ("HCA")

13               holds pursuant to Section 42(i)(7) of the Internal Revenue Code ("Section

14               42(i)(7)") has not been triggered;

15      (2)    Defendants/Counterclaimants Palm Communities, f/k/a Palm Desert

16               Development Company ("Palm") and HCA (collectively with Palm, the

17               "General Partners") cannot refinance the debt of the Frederick and 52 II

18               Limited Partnership (the "Partnership") without RCHP's prior written

19               consent; and

20      (3)    Palm has breached its fiduciary duties to the Limited Partners.

21  Plaintiffs/Counter-Defendants also move for summary judgment dismissing the

22  General Partners' claims that:

23      (1)    HCA's Section 42(i)(7) ROFR has been triggered;

24      (2)    RCHP is unreasonably withholding and delaying consent to refinance the

25               Partnership's debt;

26      (3)    The Limited Partners have breached the limited partnership agreement

27               that governs the Partnership ("LPA"), including its implied covenant of

28               good faith and fair dealing; and

1    (4)    Alden Torch has tortiously interfered with the LPA.

2    This Motion is made pursuant to Federal Rule of Civil Procedure 56 and Local

3    Rules 7 and 56, and is based on the accompanying Memorandum of Points and

4    Authorities, the Statement of Uncontroverted Facts and Conclusions of Law, and the

5    declarations of Christopher Blake and Eric S. Pettit and exhibits thereto, all filed

6    concurrently herewith, as well as all papers and records already on file with the Court,

7    and the arguments of counsel at the hearing.

8    This Motion is made following the conference of counsel pursuant to L.R. 7-3,

9    which took place in person on November 4, 2021. The parties were unable at the

10   conference to resolve any of the issues addressed by the Motion.

DATED: November 12, 2021          KING & SPALDING LLP

                                  By:/s/Eric S. Pettit_____
                                       ERIC S. PETTIT
                                  Attorneys for Plaintiffs/Counter-
                                  Defendants

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 3

    A.    Congress Creates the LIHTC Program ........................................... 3

    B.    The Parties ....................................................................................... 6

    C.    The Partnership ................................................................................ 6

    D.    The Agreement of General Partners ................................................ 8

    E.    Palm Attempts to Acquire the Property at a Below-Market Price ............. 9

    F.    Palm Rejects Alden Torch's Offers to Finance the Partnership's Long-Term Debt ............................................................................. 12

III.  RELEVANT PROCEDURAL HISTORY ................................................... 13

    A.    The Parties' Claims ....................................................................... 13

    B.    Prior Motion for Summary Judgment ........................................... 14

    C.    Newly Acquired Evidence ............................................................ 14

IV.   PLAINTIFFS/COUNTER-DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ......................................................................... 15

    A.    Standard of Review ....................................................................... 15

    B.    Plaintiffs/Counter-Defendants' Claims ........................................ 16

        1.    HCA's ROFR Has Not Been Triggered ............................. 16

        2.    RCHP's Consent Is Required to Refinance ........................ 17

        3.    Palm Breached Its Fiduciary Duties .................................. 18

    D.    General Partners' Claims .............................................................. 20

        1.    RCHP Is Not "Unreasonably Withholding and Delaying Consent" to Refinance the Partnership's Debt ................... 20

        2.    HCA's ROFR Has Not Been Triggered ............................. 20

        3.    The Limited Partners Have Not Breached the LPA ........... 21

        4.    The Undisputed Facts Doom the General Partners' Tortious Interference Claim ............................................... 21

        5.    The General Partners Acted with Unclean Hands ............. 23

V.    CONCLUSION ........................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                              **Page(s)**

*Broadcom Corp. v. Emulex Corp.*,
    No. CV1003963JVSANX, 2011 WL 13135066 (C.D. Cal. Aug. 1,
    2011) ................................................................................................................. 24

*Brown v. Halbert*,
    271 Cal.App.2d 252 (1969) ............................................................................... 18

*Credit Managers Ass'n v. Superior Court*,
    51 Cal.App.3d 352 (1975) ................................................................................. 18

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
    890 F.2d 165 (9th Cir. 1989) ............................................................................ 24

*Enea v. Superior Ct.*,
    132 Cal.App.4th 1559 (2005) ............................................................................ 19

*Feldman v. 1100 Park Lane Associates*,
    160 Cal.App.4th 1467 (2008) ............................................................................ 22

*Frank Lyon Co. v. United States*,
    435 U.S. 561 (1978)............................................................................................. 4

*Graw v. Los Angeles Cty. Metro. Transp. Auth.*,
    52 F. Supp. 2d 1152 (C.D. Cal. 1999) ............................................................. 22

*Gutierrez v. Girardi*,
    194 Cal.App.4th 925 (2011) .............................................................................. 18

*Historic Boardwalk Hall, LLC v. C.I.R.*,
    694 F.3d 425 (3d Cir. 2012) ................................................................................ 4

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014)............................................................................................. 4

*Huynh v. Vu*,
    111 Cal.App.4th 1183 (2003) ...........................................................3, 22, 23, 24

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) ...................................................................................... 22

*Langer v. Gozon*,
  19-CV-09190 PSG (MAAx), 2021 WL 4434337 (C.D. Cal. May 5,
  2021). ........................................................................................................ 15, 16

*Mercer v. Lemmens*,
  230 Cal.App.2d 167 (1964) ........................................................................ 5

*Mintz v. Blue Cross of California*,
  172 Cal.App.4th 1594 (2009) ................................................................... 24

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) .................................................................... 16

*PM Group, Inc. v. Stewart*,
  154 Cal.App.4th 55 (2007) ....................................................................... 22

*Riseboro Cmty. P'ship Inc. v. SunAmerica Hous. Fund 682*,
  482 F.Supp.3d 31 (E.D.N.Y. 2020) ........................................................... 6

*Rollins v. Stokes*,
  123 Cal.App.3d 701 (1981) ........................................................................ 4

*Scott v. Harris*,
  550 U.S. 372 (2007) ................................................................................. 16

*Senior Hous. Assistance Grp. v. AMTAX Holdings 260, LLC*,
  No. C17-1115-RSM, 2019 WL 1417299 (W.D. Wash. Mar. 29, 2019) .... 2, 5, 17, 24

*SunAmerica Hous. Fund 1050 v. Pathway of Pontiac*,
  19-11783, 2021 WL 391420 (E.D. Mich. Feb. 4, 2021) ........................... 2, 6, 17, 20

**Statutes**

26 U.S.C. § 42 ................................................................................................ 3

26 U.S.C. § 42(i) ............................................................................................ 4

26 U.S.C. § 42(i)(7)(B) .................................................................................. 4

26 U.S.C. § 7701(o)(1) ................................................................................... 4

Cal. Corp. Code § 16404(a) .......................................................................... 19

Cal. Corp. Code § 16404(d) .......................................................................... 18

Civ. Code § 47(b) ....................................................................................................... 22

**Other Authorities**

26 C.F.R. § 1.42-4(b) .................................................................................................. 4

Elizabeth Mitchell, et al., *Report of the Mitchell-Danforth Task Force on the Low-Income Housing Tax Credit* (Jan. 1989) ......................................................... 5

H.R. Rep. No. 101-247 (1989), 1989 U.S.C.C.A.N. 1906 ............................................... 5

Restatement (First) of Property, § 413 cmt. ......................................................................... 5

Tracy A. Kaye*, Sheltering Social Policy in the Tax Code: The Low-Income Housing Tax Credit*, 38 Vill. L. Rev. 871, 892-97 (1993) ............................ 5

# I.   INTRODUCTION

The Limited Partners[1] filed this action against the General Partners[2] after Palm claimed that it "desire[d] to accept" on behalf of the limited partnership it had formed with HCA and the Limited Partners (the "Partnership") a purchase offer for the housing development at issue (the "Property"), which purportedly triggered the below-market right of first refusal to purchase the Property ("ROFR") held by non-profit HCA pursuant to Section 42(i)(7) of the Internal Revenue Code ("Section 42(i)(7)").  Palm admitted in discovery, however, that it did not actually "desire to accept" the purchase offer, and only purported to do so as part of a self-described "tactic" to acquire the Property for itself at a price that is millions of dollars below fair market value. Specifically, while Palm agreed in one contract to pay fair market value for the Property, it simultaneously entered into a secret side deal with HCA—the "Agreement of General Partners"—intended to circumvent the restrictions of Section 42(i)(7) and Palm's contractual obligation to pay fair market value.

Palm has a unilateral option (as opposed to a ROFR) to purchase the Property for fair market value (or greater).  But Palm has not exercised its option because the General Partners' illicit side deal permits Palm to force HCA to exercise its below-market Section 42(i)(7) ROFR in the event it is triggered and then to sell the Property to Palm for a mere $15,000 plus HCA's costs.  If successful, Palm's self-described "tactic" will result in Palm obtaining full ownership of the Property at a multi-million dollar discount from fair market value, despite the fact that Congress specifically forbade for-profit

---

[1] Plaintiffs/Counter-Defendants Centerline Housing Partnership I, L.P. – Series 2, f/k/a Related Capital Housing Partnership I, L.P. – Series 2 ("Centerline") and RCHP SLP I L.P. – Series 2 ("RCHP" and, collectively with Centerline, the "Limited Partners").  The Limited Partners and Counter-Defendant Alden Torch Financial LLC ("Alden Torch") are referred to collectively as "Plaintiffs/Counter-Defendants."

[2] Defendants/Counterclaimants Palm Communities, f/k/a Palm Desert Development Company ("Palm") and Housing Corporation of America ("HCA" and, collectively with Palm, the "General Partners").

entities like Palm from acquiring affordable housing properties for less than fair market value when it enacted Section 42(i)(7) more than thirty years ago.

The undisputed evidence shows that Palm had already resolved to trigger HCA's ROFR before Palm had even received a third-party offer for the Property.  Indeed, Palm's President, Danavon Horn, has admitted that Palm did not genuinely desire to accept a third-party purchase offer on behalf of the Partnership, but only claimed to do so "in order to facilitate HCA's exercise of its right of first refusal."

HCA's ROFR is triggered only if (i) an unrelated third-party makes a bona fide offer to purchase the Property, and (ii) the Partnership "shall desire to accept" the offer. In adjudicating the General Partners' Motion for Partial Summary Judgment, the Court concluded that there is a triable issue of material fact "as to whether or not the offer was bona fide" (ECF No. 107 at 7) and further held that Palm may express a desire on behalf of the Partnership to accept an offer to purchase the Property without RCHP's consent (*id.* at 12).  However, the General Partners did not raise—and the Court did not determine—whether Palm actually desired to accept the offer on behalf of the Partnership, or instead was simply using the offer as a pretext to trigger HCA's ROFR so that Palm could avoid paying fair market value and obtain a multi-million dollar windfall in derogation of Section 42(i)(7) and its contractual obligations.

Plaintiffs/Counter-Defendants now raise this issue, and the undisputed evidence establishes that Palm did *not* actually "desire to accept" the purchase offer on behalf of the Partnership.  HCA's ROFR therefore has not been triggered.  *See SunAmerica Hous. Fund 1050 v. Pathway of Pontiac*, 19-11783, 2021 WL 391420, at *5-6 (E.D. Mich. Feb. 4, 2021) (finding ROFR was not triggered where the general partner did not "truly manifest an intent to sell" the property); *Senior Hous. Assistance Grp. v. AMTAX Holdings 260, LLC*, No. C17-1115-RSM, 2019 WL 1417299, at *11 (W.D. Wash. Mar. 29, 2019) ("*SHAG*") (finding ROFR was not triggered where general partners were not "genuinely interested in selling [the properties] to a third party").  The Limited Partners thus are entitled to a declaration that HCA's ROFR has not been triggered (First Cause

of Action).  In addition, the Limited Partners are entitled to partial summary judgment on its claim that Palm breached its fiduciary duties to the Limited Partners by placing its own pecuniary interests ahead of the interests of the Limited Partners and the Partnership (Third Cause of Action), and the General Partners' competing counterclaims predicated on the supposed triggering of HCA's ROFR must be dismissed.

The Limited Partners are also entitled to a declaration that the limited partnership agreement governing the Partnership (the "LPA") requires the General Partners to obtain RCHP's written consent before refinancing the Property's debt (Second Cause of Action).  Contrary to the General Partners' assertion that the RCHP is unreasonably withholding its consent, the undisputed facts show that the General Partners *never sought* RCHP's consent to any proposed refinancing terms prior to asserting this counterclaim, and that the Limited Partners subsequently *did consent* to a proposal by Palm to extend the impending maturity of the existing loan.  The General Partners' refinancing-based counterclaims accordingly must also be dismissed.

Finally, the General Partners' tortious interference with contract claim against Alden Torch must be dismissed because, *inter alia*, the evidence establishes beyond dispute that Alden Torch does not receive and is not entitled to any economic benefit from the Partnership other than through its indirect ownership of the Limited Partners. Because Alden Torch's interests are "fully congruent" with the Limited Partners' interests, *Huynh v. Vu*, 111 Cal.App.4th 1183, 1200 (2003), Alden Torch is shielded from liability for tortious interference by the manager's privilege.

## II.    FACTUAL BACKGROUND

### A.    Congress Creates the LIHTC Program

Congress created the Low-Income Housing Tax Credit ("LIHTC") to promote private investment in affordable housing by providing federal tax credits to owners of affordable housing projects.  26 U.S.C. § 42 ("Section 42").  LIHTC projects are typically structured as a partnership between investor limited partners, who provide the necessary capital, and general partners, who develop and operate the projects in

exchange for fees and other benefits.  Tax credits are earned over a 15-year span known as the "Compliance Period," but Section 42 requires LIHTC projects to continue as affordable housing for at least 30 years.  26 U.S.C. § 42(i).

Investors only receive LIHTC generated by a property if they hold an ownership stake, which requires the investor's capital contribution to have "economic substance" independent of tax benefits, including both upside potential and downside risk based on the investment's economic performance.  *See*, *e.g.*, *Frank Lyon Co. v. United States*, 435 U.S. 561, 572-73 (1978) (owners must invest in property for purposes of generating a profit and not solely to generate tax credits); *see also* 26 U.S.C. § 7701(o)(1) (economic substance doctrine requires taxpayer to have substantial purpose apart from tax effects for entering into transaction).  If a LIHTC investor is *not* a true owner—*e.g.*, if it has no ability to profit from property appreciation—then it is ineligible to claim tax credits.  *See Historic Boardwalk Hall, LLC v. C.I.R.*, 694 F.3d 425, 460 (3d Cir. 2012) (investor that "could never expect to share in any upside" was ineligible for federal tax credits); *see also* 26 C.F.R. § 1.42-4(b) ("[C]redits attributable to the ownership and operation of a [LIHTC property] may be limited or disallowed under . . . principles of tax law.").

Congress has authorized "qualifying nonprofit organization[s]"—but *not* for-profit real estate developers such as Palm—to hold a "right of 1st refusal" to purchase a LIHTC property at the end of the Compliance Period for "the principal amount of outstanding indebtedness secured by the building" plus "all Federal, State, and local taxes attributable to such sale."  26 U.S.C. § 42(i)(7)(B).  This statutory minimum ROFR price permitted under Section 42(i)(7) is commonly referred to as the "debt plus taxes" price and is typically significantly less than the fair market value of the LIHTC property.

Section 42(i)(7) does not define "right of 1st refusal," but courts "presume that Congress is aware of existing law when it passes legislation," *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) (cleaned up), and under established common law in California and elsewhere, a ROFR is a purely defensive right that can never be used to compel a sale.  *See Rollins v. Stokes*, 123 Cal.App.3d 701, 710 (1981)

(ROFR is a "preemptive right" that is "activated" only when "a third party made an offer to [the owner] that she was willing to accept"); *Mercer v. Lemmens*, 230 Cal.App.2d 167, 170 (1964) ("The distinction between an option and a preemptive right is well recognized in the law.  A preemptive right . . . merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemptive right at the stipulated price and is valid."); *see also* Restatement (First) of Property, § 413 cmt. b (2017) (rights of first refusal "are contingent upon the desire of the owner to sell").

The record of the passage and later amendment of Section 42(i)(7) leaves no doubt that Congress intended the ROFR to be exercisable if and only if the owner decides to sell.  Indeed, when considering Section 42(i)(7) some members of Congress initially proposed granting non-profit organizations and other preferred stakeholders a self-triggering below-market *purchase option*, but there were concerns that this would strip investors of their ability to participate in appreciation of the property, call into question their true owner status, and potentially make them ineligible for tax credits. Tracy A. Kaye*, Sheltering Social Policy in the Tax Code: The Low-Income Housing Tax Credit*, 38 Vill. L. Rev. 871, 892-97 (1993) (discussing legislative history); Elizabeth Mitchell, et al., *Report of the Mitchell-Danforth Task Force on the Low-Income Housing Tax Credit*, at 1 (Jan. 1989) (same).  Congress accordingly decided to permit only a *defensive* ROFR at the statutory minimum price, and not a unilateral purchase option. *See* H.R. Rep. No. 101-247 at 2665 (1989), 1989 U.S.C.C.A.N. 1906 ("[A]ny determination as to whether Federal income tax benefits are allowable to a taxpayer with respect to a qualified low-income building shall be made without regard to whether the tenants are given the [ROFR] . . . to purchase the building, for a minimum purchase price, *should the owner decide to sell* . . . .") (emphasis added); Cong. Rec. S.30528 (daily ed. Oct. 18, 1990) (same).

Every federal court to have addressed the issue has found that a Section 42(i)(7) ROFR cannot be exercised in the absence of the common law requirements of a bona fide offer that the owner is willing to accept.  *See SHAG*, 2019 WL 1417299, at *9;

*Riseboro Cmty. P'ship Inc. v. SunAmerica Hous. Fund 682*, 482 F.Supp.3d 31, 40 (E.D.N.Y. 2020), *as corrected* (Aug. 31, 2020); *SunAmerica Hous. Fund 1050*, 2021 WL 391420, at *6.

### B.    The Parties

Plaintiffs/Counter-Defendants Centerline and RCHP are, respectively, the Partnership's Investor Limited Partner and Special Limited Partner.  (UF[3] 3-4.) Counter-Defendant Alden Torch indirectly owns and manages Centerline and RCHP.  (UF 7.)  As a result of its indirect ownership of the Limited Partners, Alden Torch is entitled to certain economic benefits from the Partnership.  (UF 8.)  Alden Torch does not receive and is not entitled to any economic benefit from the Partnership other than through its indirect ownership of RCHP and Centerline.  (UF 9.)

Defendants/Counterclaimants Palm (a for-profit real estate developer) and HCA (a non-profit organization) are, respectively, the Partnership's Administrative General Partner and Managing General Partner.  (UF 1-2.)

### C.    The Partnership

The Limited Partners and General Partners are partners in the Partnership that owns the Property, a 72-unit apartment complex located in Coachella, California.  (UF 10.)  The Property is known as "Orchard Villas II" and shares amenities with "Orchard Villas I," an adjoining property.  (UF 11.)  Centerline contributed more than $7.5 million in capital to fund the development and operation of the Property (UF 12), and the Limited Partners hold a collective 99.99% ownership stake in the Partnership (UF 13).

As the Partnership's General Partners, Palm and HCA are responsible for the management and operation of the Property and must exercise their responsibilities in a fiduciary manner.  (UF 14 (LPA § 5.2.A ("The General Partners shall at all times exercise their responsibilities as General Partners in a fiduciary manner."); *see also id.* § 5.6 (confirming that the General Partners have "fiduciary obligations with respect to

---

[3] "UF" refers to the concurrently filed Statement of Uncontroverted Facts.

the management, financing, and disposition of the Apartment Complex"); § 5.8.A (prohibiting the Investor Limited Partner from "contract[ing] away the fiduciary duty owed to it by the General Partners or their Affiliates under common law")).)

As explained above, the Limited Partners are equity owners who must have an economic stake in their capital investment independent of tax benefits.  The LPA accordingly entitles the Limited Partners to cash distributions from a sale or refinance of the Property (UF 15), and from cash flow generated from the operation of the Property (UF 16).  Moreover, consistent with their 99.99% ownership stake, the Limited Partners have consent rights over capital transactions, including a sale of the Property or a refinance of the Partnership's long-term debt.  (UF 18, 20.)

The LPA also grants the Limited Partners and General Partners various disposition rights following the end of Compliance Period.  Those disposition rights ensure that the partners' respective interests are protected:

- The LPA gives the Limited Partners an option to require Palm to sell the Property following the end of the Compliance Period, subject only to an Option Agreement and Right of First Refusal (the "Option and ROFR Agreement") between the Partnership and the General Partners.  (UF 21.)

- The LPA and Option and ROFR Agreement grant Palm a unilateral option to purchase the Property following the end of the Compliance Period for *the greater of* fair market value or the debt plus taxes price in Section 42(i)(7), which in this case is far lower than fair market value.  (UF 22, 24.)  Because it holds an option, Palm can purchase the Property even if the Limited Partners do not consent, but cannot pay less than fair market value.

- The LPA and Option and ROFR Agreement also grant non-profit HCA a ROFR to purchase the Property at the Section 42(i)(7) price—which is millions of dollars below fair market value (UF 24)—after the Compliance Period, but only if the Partnership "shall desire to accept a bona fide offer from an unrelated third party

to purchase the Property." (UF 23.)  As noted above, under Section 42(i)(7), this below-market ROFR cannot be held by for-profit developers like Palm.  (UF 25.)

HCA's ROFR ensures that Palm and the Limited Partners will not sell to a third party and thereby terminate the non-profit's involvement with the Property, because a desire by the Partnership to accept a third-party purchase offer would trigger HCA's right to purchase the Property at the below-market Section 42(i)(7) price.

## D.     The Agreement of General Partners

Discovery has revealed that the General Partners disrupted the careful balance summarized above by secretly entering into a so-called "Agreement of General Partners" (the "AGP") immediately prior to the LPA.  (UF 26.)  The AGP gives Palm the benefit of HCA's below-market Section 42(i)(7) ROFR, notwithstanding that (i) Palm agreed in the Option and ROFR Agreement to pay the Partnership no less than fair market value if it wished to purchase the Property (UF 22), and (ii) as Palm admits, the Section 42(i)(7) ROFR cannot be held by for-profit entities such as Palm (UF 25). Section 11 of the AGP provides:

> If at any time HCA is extended the option to acquire the Apartment Complex and/or the interest of any limited partner in the Partnership (collectively, the "Equity Interest"), and [Palm] provides to HCA all funds necessary to pay for the Equity Interest and all of HCA's costs (including attorneys' fees) in acquiring the Equity Interest, then HCA shall have the obligation to acquire the Equity Interest.
>
> If HCA acquires the Equity Interest under the foregoing circumstances, [Palm] shall have the obligation to acquire, and HCA shall convey to [Palm] or its designee, the Equity Interest upon HCA's receipt of $15,000 plus reimbursement for HCA's costs (including attorneys' fees) incurred in conveying the Equity Interest.

(UF 27.)

The AGP allows Palm to force HCA to exercise its Section 42(i)(7) ROFR in the event it is triggered, and then to purchase the Property from HCA for $15,000 plus costs.  (UF 28.)  As HCA's corporate representative acknowledged at her deposition,

the AGP "effectively provides Palm the benefits of HCA's right of first refusal under the option agreement [and] ROFR"—a benefit worth many millions of dollars—"for the cost of the $15,000 dollars, plus costs set out in the agreement of general partners." (UF 28.)  The AGP accordingly subverts the intent of the LPA and Option and ROFR Agreement, which granted *Palm* a unilateral purchase option at fair market value or greater and *HCA* a defensive ROFR to purchase at a below-market price, but only if the Partnership "desires to accept" a bona fide third-party offer.  Moreover, by purporting to transfer HCA's ROFR to Palm, the AGP improperly incentivizes Palm to use its authority as the Partnership's Administrative General Partner to express a "desire to accept" a purchase offer in order to self-trigger the ROFR and enrich itself to the detriment of the Partnership and the Limited Partners.  Although HCA partners with many for-profit developers, Palm is the only one with a contractual right to the benefits of HCA's Section 42(i)(7) ROFR.  (UF 29.)

### E.    Palm Attempts to Acquire the Property at a Below-Market Price

For years Palm negotiated with Alden Torch regarding a potential disposition of the entire portfolio of shared LIHTC assets, including the Partnership.  (Declaration of Christopher Blake ("Blake Decl."), ¶ 6.)  The negotiations, however, were protracted and ultimately unsuccessful, leaving Palm frustrated.  (*Id.*; Declaration of Eric S. Pettit ("Pettit Decl."), Ex. R ("Horn Tr.") at 162:18-163:12.)  Palm could have exercised its option at any time under the Option and ROFR Agreement to purchase the Property at fair market value, but it did not.  Instead, the General Partners decided in late 2020 that they "were ready to move forward with triggering HCA's ROFR," which, under the AGP, would allow Palm to obtain the Property from HCA for millions of dollars below fair market value.  (UF 30.)[4]

Internal Palm documents reveal that in November 2020, Palm attempted to solicit a purchase offer for the Property from real estate developer Greystone in order to trigger

---

[4] A timeline of Palm's efforts to trigger HCA's ROFR is attached as Appendix A.

HCA's ROFR.  A Palm meeting agenda dated November 16, 2020 stated that Palm's "Strategy" was to "[e]xercise ROFR and then offer to buy Phase I."  (UF 31.)  The agenda further indicated that Palm "[n]eed[s] to get an offer from Greystone" and listed "[f]ollow up with Greystone to make an offer" as an action item.  (UF 31.)

On November 23, 2020, Greystone sent an email to Palm's President, Danavon Horn, declining to submit what Greystone called "an unsolicited offer" to purchase to the Property (despite the fact that Palm had clearly asked Greystone to make the offer). (UF 32.)  The email stated that Greystone was "not certain providing an unsolicited offer on [the Property] helps your cause."  (UF 32.)  Greystone explained that they had "fairly extensive dealings with [Alden Torch].  They know how we operate and unsolicited offers are not our normal course of business."  (UF 32.)  A Palm meeting agenda dated December 7, 2020 confirmed "Greystone will not provide an offer."  (UF 33.)[5]

Undeterred by Greystone's refusal to participate in its scheme, Palm continued to pursue its strategy to trigger the ROFR and obtain the Property for millions of dollars less than it had agreed to pay in the Option and ROFR Agreement.  On December 8, 2020, Palm requested to speak with HCA about "the possibility of enacting a Right of First Refusal (ROFR)" as a "tactic to obtain site control of the [Property]."  (UF 34.) Palm sent HCA an agenda for a call on December 15, 2020, to "Discuss the Possibility of Enacting the Right of First Refusal (ROFR)" and listed as "next steps":  "[a] 3rd party bona fide offer will be submitted to the partnership for Orchard Villas II" and "HCA will exercise its ROFR to purchase Orchard Villas for debt plus taxes."  (UF 35.)

The day after Palm reached out to HCA about exercising its Section 42(i)(7) ROFR as a "tactic to obtain site control" of the Property, Palm's President, Danavon Horn, spoke with Mauricio Rivero, the representative of a potential buyer who had

---

[5] Palm also solicited offers from other third parties as part of its "Strategy" to exercise HCA's ROFR.  (*See* Pettit Decl., Ex. AA (12/14/20 Agenda) ("Bill Rice – will provide an offer this week"); *id.*, Ex. BB (October 2020 email exchange with IAG Real Estate indicating that Palm is "looking for an offer sooner than later").)

contacted Mr. Horn regarding Palm's interest in selling properties in Palm's portfolio *other than* Orchard Villas II.  (Horn Decl. (ECF No. 59-8), ¶ 8; Pettit Decl., Ex. O (Rivero Tr.) at 27:24-28:2, 29:16-21, 65:25-66:1.)  Mr. Rivero followed up by email the same day and expressed an interest in the potential acquisition of three properties in which Palm is involved, none of which were the Property. (Pettit Decl., Ex. CC.)  Mr. Rivero testified at his deposition that Mr. Horn "raised the [Property]" with Mr. Rivero.  (*Id.*, Ex. O (Rivero Tr.) at 27:24-28:2, 29:16-21, 65:25-66:1.)

Mr. Horn spoke with Mr. Rivero again on December 17, 2020 (UF 36), and on December 22, 2020 Mr. Rivero submitted separate offers on behalf of Affordable Housing for California Communities ("AHCC") to purchase Orchard Villas I for $5.3 million and the Property (*i.e.*, Orchard Villas II) for $5.0 million.  (UF 37.)  The next day, however, Palm employee Erik Halter sent an email to Palm's outside consultant, Tony Petropulos, stating that "HCA has concerns and we're not sure they'll go along with our plan (and honor the terms of our GP Agreement)."[6]  (UF 38.)  Palm later asked Mr. Rivero for additional time to respond to AHCC's offers.  (UF 39.)

On January 8, 2021, AHCC's principal, Ulysses Lepe, left a voicemail for Mr. Horn stating that he wanted to "make the best offer possible but [] had a couple questions . . . ."  (UF 40.)  Mr. Lepe received no response from Palm, and so, on January 11, 2021, he had Mr. Rivero increase the offers to purchase Orchard Villas I and II by $100,000 each.  (UF 41-42.)  In his email transmitting the revised offers, Mr. Rivero stated that AHCC was "still open to changing the 'Sales Price' if you would be willing to let us know what is the price you are looking for???  Please call me so we may discuss the Sales Price."  (UF 43.)  Mr. Lepe testified that he was "absolutely" open to a higher counteroffer and AHCC's correspondence to Palm was "asking for how much they want for the property, basically."  (UF 44.)

---

[6] HCA subsequently expressed specific concerns regarding whether Palm would reinvest proceeds from a successful ROFR exercise in affordable housing, to which Palm responded:  "What is HCA's concern with Palm's profits?"  (Pettit Decl., Ex. LL.)

Palm ignored AHCC's invitations to make a counteroffer (UF 45) because, as Palm admitted in discovery, it did not have a genuine interest in a sale to AHCC or any other third-party buyer.  (UF 48.)  Instead, Palm was merely trying to use AHCC's offer to trigger HCA's ROFR so that Palm could acquire the Property for millions of dollars below fair market value pursuant to the AGP.  (UF 24, 49.)  As Palm's President Mr. Horn candidly testified:  "The sales price doesn't make a difference if we're going to exercise - - if we desire to exercise the ROFR . . . ."  (UF 50.)

Thus, on January 11, 2021—the same day that Palm received AHCC's revised offer—Palm sent a letter to HCA stating that the Partnership had "received, and desires to accept, a bona fide offer from an unrelated third party to purchase the Property," and that HCA's Section 42(i)(7) ROFR had been triggered as a result.[7]  (UF 46.)  Mr. Horn admitted that "obviously we had [the letter to HCA] prepared ahead of time" and had been awaiting AHCC's revised offer.  (UF 47.)  Mr. Horn further confirmed that Palm "expressed a desire to accept the offer from [AHCC] in order to facilitate HCA's exercise of its right of first refusal."  (UF 51.)

Despite HCA's initial hesitation to "go along with [Palm's] plan" (UF 38), HCA indicated on February 23, 2021, that it intended to exercise its ROFR.  (UF 53.)  That same day, Mr. Horn sent an email to HCA's President, Carol Cromar, stating that, "[a]s previously discussed, Palm agrees to honor the [AGP] and we appreciate that HCA will honor its obligation and commitment to exercise the ROFR."  (UF 54.)

## F.  Palm Rejects Alden Torch's Offers to Finance the Partnership's Long-Term Debt

On December 9, 2020—around the same time Palm was implementing its plan to trigger the ROFR—Mr. Halter and Palm's consultant, Tony Petropulos, had a phone call with Chris Blake of Alden Torch to discuss the Partnership and the Property's mortgage

---

[7] Palm did not express a "desire to accept" AHCC's offer to purchase Orchard Villas I, for which HCA does not hold a below-market ROFR.  (UF 52.)

(the "Loan"), which was set to mature on September 1, 2021.  (UF 55.)  Palm's representatives asked Mr. Blake what the Limited Partners would like to do in light of the September 1, 2021 maturity, but did not present a specific refinance proposal.  (UF 56.)  Palm also did not raise on the call the possibility that HCA might seek to exercise its ROFR to purchase the property at the Section 42(i)(7) price.  (UF 57.)

On December 16, 2020, the Limited Partners sent a letter with two proposals to address the September 1, 2020 Loan maturity date, including "a 6-month bridge loan at an interest rate equal to 1% per annum (over 500 bps [i.e., 5%] less than the current interest rate) and with no requirement for third party reports or other closing costs."

On January 15, 2021—*after* Palm notified the Limited Partners that HCA's Section 42(i)(7) ROFR had supposedly been triggered—Palm sent a letter rejecting the Limited Partners' generous offer to provide a 6-month bridge loan at 1% interest and stating that Palm "intend[s] to proceed with a refinancing transaction at the best rates and terms possible today."  (UF 59.)  Palm did not indicate that it had obtained a quote, let alone a formal term sheet, from any potential lender.  (UF 60.)  Indeed, Palm concedes that it had never sought the Limited Partners' consent to any proposed refinance at the time the letter was sent.  (UF 61.)

On August 13, 2021—i.e., more than six months after the initiation of this action and less than a month before the September 1, 2021 maturity date—Palm notified RCHP that the lender would agree to extend the terms of the Loan for six months, with the opportunity to seek another six-month extension, and requested RCHP's consent to the extension.  (UF 62.)  On August 25, 2021, RCHP provided its written consent and Palm agreed to the extension on behalf of the Partnership.  (UF 63.)

## III.   RELEVANT PROCEDURAL HISTORY

### A.   The Parties' Claims

The Limited Partners filed this action on January 19, 2021 to request a judicial determination that:  (1) Palm cannot refinance the Partnership's debt without RCHP's consent; and (2) HCA's Section 42(i)(7) ROFR under the Option and ROFR Agreement

has not been triggered and may not be exercised without RCHP's consent.  (ECF No. 1 (Complaint) ¶¶ 65-85.)  On March 9, 2021, the General Partners asserted competing counterclaims for declaratory relief (ECF No. 17 (Counterclaims) ¶¶ 106-20), plus a separate counterclaim against the Limited Partners for breach of the LPA and its implied covenant of good faith and fair dealing (*id.* ¶¶ 121-38), and a counterclaim against Alden Torch for tortious interference with contract (*id.* ¶¶ 139-48).  On April 30, 2021, the Limited Partners filed an Amended Complaint asserting an additional claim against Palm for breach of fiduciary duty.  (ECF No. 54 at ¶¶ 92-95.)

### B.   Prior Motion for Summary Judgment

The General Partners filed a Motion for Partial Summary Judgment on May 13, 2021.  (ECF No. 59.)  Plaintiffs/Counter-Defendants filed their opposition brief on August 30, 2021 (ECF No. 76), and the Court entered its order on November 1, 2021. (ECF No. 107 (the "11/1/21 Order").)  The Court held that the evidence "raises a triable issue of material fact as to whether the General Partners induced AHCC's Purchase Offer for the purpose of triggering HCA's ROFR" (*id.* at 13) and on that basis denied the General Partners' motion with respect to:  (i) "whether the offer was bona fide," (*id.* at 8); (ii) the Limited Partners' claim for breach of fiduciary duty (*id.* at 13); and (iii) the General Partners' claim for breach of contract (*id.* at 13-14).  The Court also granted summary judgment in part and "declare[d] [Palm] has the power under the Partnership Agreement to express, on behalf of the Partnership, a desire to sell the Apartment Complex, whereby [RCHP's] consent is only necessary for a sale transaction to become binding on the Partnership."  (*Id.* at 12.)

The Court's 11/1/21 Order did not address whether Palm in fact "desire[d] to accept" AHCC's purchase offer on behalf of the Partnership as expressly required under the Option and ROFR Agreement, and also did not address the parties' refinance claims.

### C.   Newly Acquired Evidence

When Plaintiffs/Counter-Defendants filed their opposition to the prior summary judgment motion (ECF No. 76), the General Partners were still withholding from

-14-

production relevant documents that were the subject of a pending motion to compel (ECF No. 72).  The Court subsequently entered an order compelling the General Partners to produce additional discovery (ECF No. 82), and in September 2020 the General Partners produced hundreds of additional responsive documents that they had previously refused to produce (Pettit Decl., ¶ 2.)  In a separate order, the Court also permitted Plaintiffs/Counter-Defendants to further depose Messrs. Horn, Halter, and Petropulos for an additional 90 minutes each regarding the newly produced documents. (ECF No. 97.)  This new evidence—which was not available to Plaintiffs/Counter-Defendants in connection with the General Partners' prior summary judgment motion but is cited and relied on in support of this Motion—confirms that Palm never had a desire to accept a third-party offer to purchase the Property, but rather was engaged in a months-long scheme to trigger HCA's ROFR for Palm's own benefit.

## IV.  PLAINTIFFS/COUNTER-DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

### A.  Standard of Review

Summary judgment is warranted if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Langer v. Gozon*, 19-CV-09190 PSG (MAAx), 2021 WL 4434337, at *1 (C.D. Cal. May 5, 2021).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Where the non-moving party has the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the moving party's case.  *Langer*, 2021 WL 4434337, at *1.  If the moving party meets its initial burden, the nonmoving party must set forth more than the mere existence of a scintilla of evidence; the nonmoving party must set forth evidence sufficient to allow a factfinder to render a verdict in their favor.  *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

**B.      Plaintiffs/Counter-Defendants' Claims**

The undisputed evidence establishes that summary judgment should be entered on Plaintiffs/Counter-Defendants' claims that (1) HCA's ROFR has not been triggered; (2) RCHP's written consent is required to refinance the Partnership's debt; and (3) Palm has breached its fiduciary duties as the Partnership's Administrative General Partner.

**1.      HCA's ROFR Has Not Been Triggered**

Under the express terms of the Option and ROFR Agreement, HCA's ROFR is triggered only if the Partnership "shall desire[] to accept a bona fide offer from an unrelated third party to purchase the Property." (UF 23.)  Notwithstanding the Court's prior ruling that there is a factual dispute as to whether the purchase offer was bona fide (*see* ECF No. 107 at 12), HCA's ROFR has not been triggered for the independent reason that Palm did not "desire to accept" AHCC's purchase offer on behalf of the Partnership.

Indeed, Palm *admitted* in discovery that it "did not genuinely desire" to accept AHCC's offer on behalf of the Partnership (UF 48), but rather "expressed a desire to accept the offer from [AHCC] in order to facilitate HCA's exercise of its right of first refusal." (UF 49.)  This was part of Palm's stated plan to "enact[] a Right of First Refusal (ROFR)" as a "tactic to obtain site control of the [Property]." (UF 34.)  And contemporaneous internal documents that Palm recently produced following Plaintiffs/Counter-Defendants' successful motion to compel leave no doubt that Palm had adopted a "Strategy" to "[e]xercise ROFR and then offer to buy Phase I" long before it received an offer to purchase the Property.  (UF 31.)

Courts have entered summary judgment against LIHTC general partners who, like Palm here, have purported to desire to accept a third-party offer as a pretext to trigger a below-market ROFR.  In *SunAmerica Housing Fund 1050*, the district court entered summary judgment against a general partner who did not "truly manifest an intent to sell" the property, but merely purported to intend to sell the property as part of a calculated effort to trigger the ROFR.  2021 WL 391420, at *5-6 (stating that the

evidence "made clear well before the General Partners received" the offer "that they intend[ed] to" trigger the ROFR).

The district court in *SHAG* likewise held that the limited partner was "entitled to a declaration that" the ROFR was "neither triggered nor validly exercised" where the general partners were not "genuinely interested in selling [the properties] to a third party," but purported to express an interest to sell "as part of [the general partner's] secret effort to self-trigger its ROFR." 2019 WL 1417299, at *1, *11, *13. The court found that the general partners in *SHAG* had acted in bad faith based in part on the fact that the non-profit and for-profit general partners had a side agreement that, like the AGP between Palm and HCA, required the non-profit to relinquish rights to its for-profit partner upon successful exercise of its Section 42(i)(7) ROFR. *Id.* at *9 (discussing "Global Indemnity Agreement" in which for-profit general partners "would maintain their ownership interest" upon the non-profit's exercise of its ROFR).[8]

Because Palm admits that it did not "desire[] to accept" AHCC's offer on behalf of the Partnership, Plaintiffs/Counter-Defendants are entitled to a declaration that HCA's ROFR has not been triggered.

## 2. RCHP's Consent Is Required to Refinance

The LPA authorizes Palm to refinance the Partnership's long-term debt, "<u>provided</u>, <u>however</u>, that the terms of any such modification, refinancing, or repayment must receive the Consent of the Special Limited Partner[9] [RCHP] (which consent shall not be unreasonably withheld or delayed) . . . ." (UF 17.) Indeed, Palm's President,

---

[8] Although the AGP and the agreement in *SHAG* both improperly assigned to for-profit developers rights to which they were not entitled under Section 42(i)(7), the AGP is a much greater relinquishment of the non-profit's rights because it (a) entitles Palm to compel HCA to exercise the ROFR, and (b) results in sole ownership of the Property by Palm (as opposed to the joint ownership contemplated by the agreement in *SHAG*).

[9] "'Consent of the Special Limited Partner' means the prior written consent or approval of the Special Limited Partner, which may be granted or withheld in its sole discretion, unless otherwise specified herein to the contrary." (UF 19.)

Danavon Horn, has conceded that RCHP's consent is required to refinance the Partnership's debt.  (UF 64.)  Plaintiffs/Counter-Defendants accordingly are entitled to a judicial declaration that Palm may not authorize a refinance transaction by the Partnership without RCHP's prior written consent.

### 3.     Palm Breached Its Fiduciary Duties

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."  *Gutierrez v. Girardi*, 194 Cal.App.4th 925, 932 (2011) (citation omitted).  "It is now well established that our courts have placed the burden of proof squarely on the fiduciary when there is evidence that he secured an advantage for himself."  *Brown v. Halbert*, 271 Cal.App.2d 252, 266 (1969) (citing cases); *see also Credit Managers Ass'n v. Superior Court*, 51 Cal.App.3d 352, 361 (1975) (noting "well established and widely recognized principle[]" that "the fiduciary has the burden of justifying his conduct").

As the Partnership's Administrative General Partner, Palm owes fiduciary duties of loyalty and care to the Limited Partners and must carry out its responsibilities "consistently with the obligation of good faith and fair dealing."  Cal. Corp. Code § 16404(d); *see also id.* § 16404(a); UF 14; *Enea v. Superior Ct.*, 132 Cal.App.4th 1559, 1564 (2005) ("It is hornbook law that in forming such an arrangement the partners obligate themselves to share risks and benefits and to carry out the enterprise with the highest good faith toward one another—in short, with the loyalty and care of a fiduciary.").

The LPA and Option and ROFR Agreement grant Palm an *option* to purchase the Property at fair market value (or greater), *not* a ROFR at the below-market price that Congress reserved for non-profits and other eligible stakeholders when it enacted Section 42(i)(7).  (UF 22-25.)  The AGP, however—which the General Partners kept secret from the Limited Partners until this litigation—upended the bargain the parties had negotiated and disrupted the balance of power agreed upon in the LPA and the

Option and ROFR Agreement by granting Palm the right to acquire the Property via HCA's below-market ROFR.  (UF 26-29.)  Indeed, because Palm, unlike HCA, has the authority to sell the Property under Section 5.4.A (subject to RCHP's consent to the sale terms), HCA's assignment of its Section 42(i)(7) ROFR transformed the inherently *defensive* right it was purporting to assign into an *offensive* right that Palm is attempting to use to force the Partnership to sell the Property to Palm at a price that is millions of dollars below the fair market value that Palm agreed to pay in the Option and ROFR Agreement.  (*Id.*)

Having secured this right without telling the Limited Partners, Palm later sought to exploit the AGP by claiming that Palm "desire[d] to accept" a third-party purchase offer on behalf of the Partnership.  In reality, however, what Palm really "desire[d]" was to enrich itself at the expense of the Partnership and its other partners by using the exercise of HCA's ROFR as a "tactic to obtain site control of the [Property]" at a price that is millions of dollars less than what it is worth.  (UF 24, 34.)  The uncontroverted evidence shows that:  Palm had resolved to trigger the ROFR even before it had received an offer; did not negotiate with the offeror despite multiple invitations for a counter-offer; and did not conduct any due diligence on the third-party offer.  (UF 30-54.)

Palm did not consider what was in the best interests of the Partnership or the Limited Partners, but instead acted exclusively in its own interests to acquire the Property at a multimillion-dollar discount.  Palm's duplicitous scheme to abuse its position as the Partnership's Administrative General Partner to enrich itself at the expense of the Limited Partners is a clear violation of the fiduciary duties of good faith, fair dealing, loyalty, and care.  *See SunAmerica Housing Fund 1050*, 2021 WL 391420, at *6 (finding that general partners breached fiduciary duties to the limited partners by purporting to manifest an intent to sell for the sole purpose of triggering the ROFR).

The Limited Partners have also been injured by Palm's conduct.  Palm engaged in its "tactic" in close coordination with HCA, forcing the Limited Partners to protect their rights from the very fiduciaries that are supposed to be looking out for their best

interests.  And if Palm were to acquire the Property pursuant to the AGP, the Limited Partners' damages will be measured by the resulting decrease in value of the Limited Partners' interests in the Partnership.

### D.  General Partners' Claims

Plaintiffs/Counter-Defendants are also entitled to summary judgment as to the General Partners' remaining claims.

#### 1.  RCHP Is Not "Unreasonably Withholding and Delaying Consent" to Refinance the Partnership's Debt

The General Partners seek a judicial determination that RCHP is "unreasonably withholding and delaying consent to refinance" the Partnership's debt (Counterclaims ¶ 120(b)), but the Limited Partners have never withheld or delayed consent to any proposed refinance.  (UF 59-61.)  To the contrary, Palm put the onus on the *Limited Partners* to propose options to address the maturity date for the Loan, which the Limited Partners did on December 16, 2020.  (UF 58.)  Palm, moreover, did not respond to the Limited Partners' proposals until almost one month later, when it rejected both proposals and confirmed its intent to move forward with a refinance—the terms of which were not disclosed—without RCHP's consent.  (UF 59.)

Although Palm never sought RCHP's consent to a refinance prior to asserting its counterclaim on this issue, Palm recently requested RCHP's consent to a six-month extension of the Loan.  (UF 62.)  RCHP provided its written consent to this proposal and, on August 25, 2021, Palm agreed to the extension on behalf of the Partnership.  (UF 63.)  Palm accordingly is not entitled a judicial declaration that RCHP is "unreasonably withholding and delaying consent to refinance" and the Court should enter summary judgment in Plaintiffs/Counter-Defendants favor as to this counterclaim.

#### 2.  HCA's ROFR Has Not Been Triggered

The General Partners also seek a declaration that Palm, "on behalf of the Partnership, received and desired to accept" AHCC's purchase offer, which "triggered HCA's ROFR, entitling HCA to exercise its ROFR pursuant to the terms of the ROFR

Agreement." (Counterclaims ¶ 120(d), (f).)  As discussed in Section IV.B.1, *supra*, however, Palm did not actually desire to accept AHCC's purchase offer on behalf of the Partnership, but rather purported to do so as a pretext to trigger HCA's ROFR for Palm's own benefit.  (UF 30-54.)  HCA's ROFR accordingly has not been triggered, and the General Partners are not entitled to the declaratory relief they seek.

### 3.    The Limited Partners Have Not Breached the LPA

The General Partners claim that RCHP breached the LPA by "unreasonably refus[ing] and delay[ing] its consent to any refinance of the Partnership's debt" (Counterclaims at ¶ 124) and that the Limited Partners breached the LPA by "fil[ing] the Complaint" to "prevent[] HCA's ability to close on its ROFR" (*id.* at ¶ 134-35).

The General Partners' claim that RCHP breached the LPA by withholding its consent to refinance the Partnership's debt fails because, as discussed in Section IV.D.1, *supra*, RCHP never delayed or withheld its consent to any proposed refinance.

As for the claim that the Limited Partners breached the LPA by initiating this litigation, for the reasons discussed above, the Limited Partners were fully justified in filing this action to vindicate their rights under the LPA, and doing so in no way breached the LPA.  The General Partners' breach of contract claim is also barred by the litigation privilege, which precludes liability based on, *inter alia*, a "publication or broadcast" made as part of a "judicial proceeding."  Civ. Code § 47(b).  Courts "have interpreted the litigation privilege broadly" to apply to a range of claims—including breach of contract claims—to "further[] the policy of allowing access to the courts without fear of harassing derivative actions."  *Feldman v. 1100 Park Lane Associates*, 160 Cal.App.4th 1467, 1485, 1498 (2008).

### 4.    The Undisputed Facts Doom the General Partners' Tortious Interference Claim

Finally, as discussed above, the undisputed facts show that the LPA was not breached or disrupted, and thus the tortious interference claim against Aden Torch fails as well.  *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (claim for

tortious interference with contract requires proving "actual breach or disruption of the contractual relationship").

The General Partners' tortious interference claim fails for the additional reason that Alden Torch—as the indirect owner of the Limited Partners—is shielded from liability by the manager's privilege.  A claim for tortious interference with contractual relations may be asserted only against a "stranger" to the contract "who ha[s] no legitimate interest in the scope or course of the contract's performance."  *PM Group, Inc. v. Stewart*, 154 Cal.App.4th 55, 64-65 (2007) (citation omitted).  By contrast, where the interests of the contracting party and its manager or owner are "fully congruent," it is shielded from liability.  *Huynh*, 111 Cal.App.4th at 1200.[10]  The Court denied Alden Torch's motion to dismiss the tortious interference claim based on the sufficiency of the General Partners' allegations, but recognized that "it is possible that the manager's privilege may apply" and left open for discovery whether Alden Torch's "interests are 'fully congruent' with the interests of the Limited Partners."  (ECF No. 50 at 7.)

Plaintiffs/Counter-Defendants have since provided undisputed evidence confirming that Alden Torch's interests in the Partnership are wholly derivative of its ownership of the Limited Partners, and "a manager's desire to advance his or her personal interests as an indirect and secondary result of benefiting the principal should not vitiate the privilege."  *Huynh*, 111 Cal.App.4th at 1200.  Specifically, the evidence shows that:

- As between the Limited Partners, all but a *de minimus* amount of cash from the Partnership is distributed to Centerline (Blake Decl., Ex. A (LPA) at §§ 9.1.A, 9.1.B, 9.2.A, 9.2.B);

---

[10] Plaintiffs/Counter-Defendants respectfully maintain that the correct standard for applying the manager's privilege is set forth in *Graw v. Los Angeles Cty. Metro. Transp. Auth.*, 52 F. Supp. 2d 1152, 1154 (C.D. Cal. 1999), but accept the Court's prior determination that the standard in *Huynh* applies for the purpose of this Motion.

- Centerline's[11] limited partnership agreement reflects that all but a *de minimus* portion of cash flow that Centerline receives from its interest in the Partnership is distributed to Centerline's limited partner (*id.*, Ex. C at §§ 5.2, 5.3);

- In 2015, Centerline's original limited partner assigned its interest in Centerline to Omena, LLC (*id.*, Ex. E);

- Omena, LLC has a sole member and owner (*id.*, Ex. F), whose interest was ultimately assigned to Alden Torch in 2018 (*id.*, Exs. G-H); and

- Alden Torch does not receive and is not entitled to any economic benefit from the Partnership other than through its indirect ownership of RCHP and Centerline.  (UF 9.)

While the General Partners have vaguely *alleged* that Alden Torch is entitled to economic benefits *other* than through its indirect ownership of the Limited Partners, no evidence of such benefits exists because Alden Torch is not entitled to any such benefits. Having established conclusively that any benefit Alden Torch receives is derived exclusively from its ownership of the Limited Partners, *i.e.*, that Alden Torch's interests and the Limited Partners' interests are "fully congruent," *Huynh*, 111 Cal.App.4th at 1200, Plaintiffs/Counter-Defendants are entitled to summary judgment on the General Partners' claim for tortious interference against Alden Torch.  *See Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594, 1604 (2009) ("[I]t is settled" that a managing or controlling entity "acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract.").

### 5.    The General Partners Acted with Unclean Hands

The General Partners' claims must be dismissed for the additional reason that they acted with unclean hands.  (*See* ECF Nos. 26, 58 (asserting unclean hands affirmative defense).)  Unclean hands "bars relief to a plaintiff who has violated conscience, good

---

[11] Centerline was previously named Related Capital Housing Partnership I L.P. – Series 2.  Plaintiffs/Counter-Defendants produced the amendment reflecting the name change.  (Blake Decl., Ex. D.)

faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).  To prevail on an unclean hands defense, "the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Broadcom Corp. v. Emulex Corp.*, No. CV1003963JVSANX, 2011 WL 13135066, at *2 (C.D. Cal. Aug. 1, 2011) (citation omitted).

Palm's scheme to trigger HCA's ROFR in order to acquire the Property at a multi-million-dollar discount in violation of Section 42(i)(7) and Palm's contractual obligations (UF 30-54) was inequitable and undertaken in bad faith, and the General Partners' claims should be dismissed.  *See SHAG*, 2019 WL 1417299, at *12 (granting summary judgment on unclean hands defense where general partner engaged in scheme "to trigger [the] ROFR" so that general partner could acquire properties "at below market prices, knowing that the Project Partnerships had no intention of accepting the buyers' offers").

# V.   CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs/Counter-Defendants' Motion for Partial Summary Judgment.

DATED: November 12, 2021        KING & SPALDING LLP

                                By: */s/Eric S. Pettit*
                                    ERIC S. PETTIT
                                Attorneys for Plaintiffs/Counter-Defendants

## Appendix A – Timeline of Events

| Date | Event | Evidence |
|---|---|---|
| 11/16/20 | Palm states that it "[n]eed[s] to get an offer from Greystone" as part of its "[s]trategy" to "[e]xercise ROFR" for the Property. | UF 31 |
| 11/23/20 | Greystone declines to provide an offer and states that Alden Torch "know[s] how we operate and unsolicited offers are not our normal course of business." | UF 32-33 |
| 12/8/20 | Palm asks to meet with HCA about "the possibility of enacting a Right of First Refusal (ROFR)" as a "tactic to obtain site control of the [Property]." | UF 34 |
| 12/9/20 | Palm and Alden Torch discuss the September 1, 2021 maturity of the Property's mortgage, but not Palm's plan to trigger HCA's ROFR. | UF 55 |
| 12/9/20 | Mauricio Rivero contacts Palm's President, Danavon Horn, on behalf of Affordable Housing for California Communities ("AHCC") to discuss Palm's interest in selling properties other than the Property. | ECF No. 59-8 ("Horn Decl."), ¶ 8; Pettit Decl., Ex. O at 27:24-28:2, 29:16-21, 65:25-66:1 |
| 12/9/20 | Mr. Rivero follows up with Palm by email and expresses an interest in acquiring three properties other than the Property. | Pettit Decl., Ex. V |
| 12/14/20 | Palm solicits a purchase offer from Bill Rice. | Pettit Decl., Ex. AA |
| 12/15/20 | Palm and HCA representatives meet to discuss "next steps" to trigger HCA's ROFR. | UF 35 |
| 12/16/20 | The Limited Partners send a letter with two proposals to address the September 1, 2021 mortgage maturity date. | UF 55 |
| 12/17/20 | Mr. Horn speaks with Mr. Rivero again. | Horn Decl., ¶ 8 |
| 12/22/20 | Mr. Rivero submits on behalf of AHCC an offer to purchase the Property and a separate offer to purchase Orchard Villas I. | UF 37 |
| 12/23/20 | Palm sends an email stating that "HCA has concerns and we're not sure they'll go along with our plan (and honor the terms of our GP Agreement)." | UF 38 |
| 12/29/20 | Palm asks Mr. Rivero for additional time to respond to AHCC's offers. | UF 39 |
| 12/31/20 | In response to an inquiry from HCA as to whether Palm would reinvest proceeds from a successful ROFR exercise in affordable housing, Palm asks: "What is HCA's concern with Palm's profits?" | Pettit Decl., Ex. LL |
| 1/11/21 | AHCC increases its offers by $100,000 each. | UF 42 |
| 1/11/21 | Palm sends a letter that had been prepared ahead of time stating that HCA's Section 42(i)(7) ROFR had been triggered. | UF 46-47 |
| 1/15/21 | Palm sends a letter stating that Palm "intend[s] to proceed with a refinancing transaction at the best rates and terms possible today." | UF 59 |
| 2/23/21 | Palm sends an email to HCA stating that, "[a]s previously discussed, Palm agrees to honor the [AGP] and we appreciate that HCA will honor its obligation and commitment to exercise the ROFR." | UF 54 |
| 2/23/21 | HCA indicates that it intends to purchase the Property pursuant to the purported exercise of its ROFR. | UF 53 |