# EXHIBIT B

## OPTION AGREEMENT AND RIGHT OF FIRST REFUSAL

This Option Agreement and Right of First Refusal (the "Agreement") is made and entered into as of this 1st day of March, 2002, by and between FREDERICK AND 52 II LIMITED PARTNERSHIP, a California limited partnership ("Owner"), PALM DESERT DEVELOPMENT COMPANY, a California corporation ("Optionee") and HOUSING CORPORATION OF AMERICA, a Utah non-profit corporation ("HCA"), with reference to the following recitals of fact:

### R E C I T A L S:

A.      WHEREAS, Owner owns fee title in and to that certain real property located in Coachella, California and more particularly described on Exhibit A attached hereto and incorporated herein by this reference, and certain improvements situated thereon, currently known as Orchard II Villas, an 72-unit low income housing development (collectively, the "Property");

B.      WHEREAS, Owner desires to grant to Optionee an option to purchase the Property, and desires to grant to HCA a right of first refusal with respect to a proposed sale of the Property; and

C.      WHEREAS, the parties hereto desire to set forth the terms of the option granted herein below from Owner to Optionee to purchase the Property and to set forth the terms of the right of first refusal granted herein below from Owner to HCA.

NOW, THEREFORE, the parties hereto agree as follows:

### A G R E E M E N T:

1.      Grant of Option. Owner hereby grants to Optionee an option (the "Option") to purchase the Property, and any existing reserves related to the Property (the "Required Reserves"), including, without limitation, any operating reserves and/or replacement reserves, on the terms and conditions set forth in this Agreement.

2.      Term of Option. The term of the Option shall commence on the first day of the 16th year following the commencement of the ten-year tax credit period for the Property, and shall expire at 11:59 p.m. (Pacific Standard Time) on the last day of the 19th year following the beginning of such 10-year tax credit period (the "Option Term"); provided, however, that the Option granted hereunder shall immediately terminate with respect to Optionee, if Optionee withdraws or is removed, as a general partner of Owner.

3.      Manner of Exercising Option. Optionee may exercise the Option by delivering to Owner, at any time during the Option Term, written notice of such exercise. The notice of exercise shall state that the Option is exercised without condition or qualification.

4.      Purchase Price.

(a)      The purchase price for the Property pursuant to the Option shall be the greater of the following amounts, subject to the provisos set forth hereinbelow:

(i)      Debt, Credits and Taxes. An amount sufficient to (A) pay all liabilities of the Owner upon Owner's termination and liquidation as projected to occur immediately following the sale pursuant to the Option; (B) pay any deficiency in the federal

5215/60851-045 LALIB1/511162 v4

86

and/or state tax credits projected to be received by the limited partners unless otherwise recovered by the limited partners; and (C) distribute to the partners of Owner, proceeds equal to the federal, state and local taxes projected thereof as a result of the sale pursuant to Section 9.2B of the Second Amended and Restated Agreement of Limited Partnership of the Owner pursuant to the Option granted hereunder; or

(ii) Fair Market Value. The fair market value of the Property, appraised as a low-income housing development to the extent continuation of such use is required under any restrictions applicable to the Property. Any such appraisal shall be made in the manner described in paragraph 4(b) below and the appraisers performing such appraisals shall each be members of the Master Appraiser Institute and shall have experience in the geographic area in which the Property is located.

(b) The fair market value of the Property shall include the amount of any Required Reserves and shall be determined as follows: if Owner and the Optionee cannot agree on the fair market value within twenty (20) days of the date of the exercise of the Option, either party may give a written notice to the other instituting the following appraisal process. Within ten (10) days of the date of such notice, Owner and Optionee shall select a mutually acceptable appraiser. In the event the parties are unable to agree upon an appraiser Owner and Optionee shall each select an appraiser. For purposes of this subparagraph 4(b), the parties hereto agree that, on behalf of Owner, Related Direct SLP LLC, a Delaware limited liability company ("SLP"), one of the limited partners of Owner, shall have the right to select the appraiser(s) that Owner is entitled to select hereunder. If 96% of each appraisal is less than the purchase price set forth in Paragraph 4(a)(i) above, the purchase shall be as set forth in Paragraph 4(a)(i). In all other events, if the difference between the two appraisals is less than or equal to ten percent (10%) of the lower of the two appraisals, the fair market value shall be 96% of the average of the two appraisals. If the difference between the two appraisals is greater than ten (10%) of the lower of the two appraisals, and at least one of the appraisals exceeds the amount described in 4(a)(i), then the two appraisers shall jointly select a third appraiser whose determination of fair market value shall be deemed binding on all parties and fair market value shall be 96% of such amount. If the two appraisers are unable jointly to select a third appraiser, either Owner or Optionee may, upon written notice to the other, request that the appointment be made by the then President of the Los Angeles, California Chapter of the American Arbitration Association, or his or her designee. The appraisal shall take into account the requirement that the Property remain dedicated for the use of low income persons, as well as any restrictions under any loan agreements or regulatory agreements pertaining to the Property, and the requirements of Section 42 of the Internal Revenue Code of 1986, as amended ("Code"), and the terms of any assumable financing. Owner and Optionee shall share the cost equally of any appraiser jointly selected or shall pay the costs of the appraiser they each select and shall share the cost equally of any third appraiser, including any appraiser chosen by the American Arbitration Association chapter president.

5. Right of First Refusal.

If, at any time during the Option Term, Owner shall desire to accept a bona fide offer from an unrelated third party to purchase the Property from Owner, Owner shall deliver a copy of the proposed offer to HCA and HCA shall have the right, to be exercised by written notice to Owner within forty-five (45) days after receipt of a copy of the proposed offer from Owner, to respond in writing to Owner indicating that HCA desires to purchase the property for a price equal to the amount set forth in Paragraph 4(a)(i) above. If HCA does not timely respond to Owner's notice, Owner will be free to sell the Property on substantially the terms set forth in the notice.

6. Completion of Sale.

(a) Prior to the close of escrow on the Property following exercise of the Option or the right of first refusal, Owner shall cause a title company to issue, upon close of escrow, an ALTA owner's policy of title insurance dated as of the close of escrow, in an amount equal to the purchase price for the Property, showing title to the Property vested in the Optionee following exercise of the Option, or vested in HCA following exercise of the right of first refusal, and showing as exceptions all encumbrances of record.

(b) Escrow for the sale of the Property shall close no later than one hundred eighty (180) days after Owner's receipt of Optionee's written notice of exercise of the Option or HCA's written notice of exercise of the right of first refusal, at which time the purchase price shall be due and payable. HCA or the Optionee shall use its best efforts to obtain the consent to the sale by the holders of any mortgages or deeds of trust on the Property, if required. Owner shall convey the Property to Optionee or HCA by means of a grant deed. The costs of such sale shall be apportioned between Owner and Optionee (or HCA) according to the custom then in effect in Coachella, California. The following terms shall apply to the sale of the Property: (i) the sale of the Property shall be on an as-is, where-is basis, without representation or warranty, except such representations or warranties as are customarily included in a grant deed in California; (ii) third party brokerage fees, if any, shall be paid by Optionee or HCA; and (iii) rents, insurance, taxes and debt service then due and payable shall be apportioned as of the day the grant deed is actually recorded in the official records of Riverside County, California.

7. Quitclaim Deed on Termination of Option. Upon termination of the Option, Optionee and HCA agree, upon Owner's request, to (a) execute and deliver to Owner quitclaim deeds, releasing all of Optionee's and HCA's rights, title and interest in and to the Option and right of first refusal as applicable, within thirty (30) days after termination of the Option Term, and (b) execute, acknowledge and deliver such other documents as may be reasonably required by Owner's title company to remove the cloud of the Option from title to the Property.

8. Notices. Notices, demands and communications between the parties shall be in writing and shall be served personally or by depositing the same in the certified United States mail, return receipt requested, post prepaid, and, if intended for Optionee shall be addressed to:

> c/o Palm Desert Development Company
> 73-061 El Paseo, Suite 214
> Palm Desert, California 92261
> Attention: Danavon L. Horn

> with copies to:

> Goldfarb & Lipman
> 1300 Clay Street, Ninth Floor
> Oakland, CA 94612
> Attention: John Haygood, Esq.

if to owner, to it at:

> c/o Palm Desert Development Company
> P.O. Box 3958
> Palm Desert, California 92261
> Attention: Danavon L. Horn

with copies to:

Goldfarb & Lipman
1300 Clay Street, Ninth Floor
Oakland, CA 94612
Attention: John Haygood, Esq.

and

Mark F. Nelson, Esq.
31423 South Coast Highway
Suite 7100
Laguna Beach, California 92651-6997

With a copy to:

RCC Credit Facility L.L.C.
c/o Related Capital Company
625 Madison Avenue
New York, New York 10022-1801
Attention: Marc D. Schnitzer

and:

Proskauer Rose LLP
2049 Century Park East Suite 3200
Los Angeles, CA 90067
Attention: Kenneth Krug, Esq.

and, if intended for HCA shall be addressed to:

Housing Corporation of America
150 South 600 East, Suite 1A
Salt Lake City, Utah 84102
Attention: Ronald H. Olson

and

Mark F. Nelson, Esq.
31423 South Coast Highway
Suite 7100
Laguna Beach, California 92651-6997

or to such address as either party may have furnished to the other in writing as a place for the service of notice. Any notice so mailed shall be deemed to have been given on the delivery date, or the date that delivery is refused by the addressee, as shown on the return receipt.

    9. Attorney's Fees. In the event of any action or proceeding at law or in equity between Owner and Optionee and/or HCA enforce any provision of this Agreement or to protect or establish any right of remedy of either party hereunder, the unsuccessful party to the litigation shall pay to the prevailing party all costs and expenses, including, without limitation, reasonable attorneys' fee incurred therein by the prevailing party, and if the prevailing party recovers judgment in any action or proceeding, the costs, expenses and attorney's fees shall be included in and as part of the judgment.

10. <u>Miscellaneous</u>.

  (a) Owner, Optionee and HCA each represent and warrant that neither has had or will have any dealings with any person, firm, broker or finder in connection with the negotiation of this Agreement and/or the consummation of the transactions contemplated hereby. Each party hereto hereby agrees to indemnify and hold harmless the other party from and against costs, expenses of liabilities for compensation, commissions or charges which may be claimed by any broker, finder or similar party by reason of any actions of the indemnifying party.

  (b) The rights and obligations of Owner, Optionee and HCA under this Agreement shall inure to the benefit of, and bind, the respective successors and assigns.

  (c) The captions used herein are for convenience of reference only and are not part of this Agreement and do not in any way limit or amplify the terms and provisions hereof.

  (d) Time is of the essence of each and every agreement, covenant and condition of this Agreement.

  (e) This Agreement shall be interpreted in accordance with, and governed by, the laws of the State of California.

  (f) This Agreement constitutes the entire agreement between Owner, Optionee and HCA, with respect to the subject matter hereof, and supersedes all prior offers and negotiations, oral and written. This Agreement may not be amended or modified in any respect whatsoever except by an instrument in writing signed by Owner, Optionee and HCA; provided, however, no amendment or modification shall be effective unless consented to in writing by SLP.

  (g) Owner, Optionee and HCA shall subordinate this Agreement to the lien of any deed of trust necessary to develop the Property.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

IN WITNESS WHEREOF, Owner and Purchaser have executed this Agreement as of the date first above written.

OWNER:

FREDERICK AND 52 II LIMITED PARTNERSHIP,
a California limited partnership

By: PALM DESERT DEVELOPMENT
COMPANY, its Administrative General Partner

By: _____[signature]_____
  Name: _____
  Title: _____

OPTIONEE:

PALM DESERT DEVELOPMENT COMPANY,
a California corporation

By: _____[signature]_____
  Name: _____
  Title: _____

HCA:

HOUSING CORPORATION OF AMERICA,
a Utah non-profit corporation

By: _____
  Name: _____
  Title: _____

5215/60851-045 LALIB1/511162

91

IN WITNESS WHEREOF, Owner and Purchaser have executed this Agreement as of the date first above written.

OWNER:

FREDERICK AND 52 II LIMITED PARTNERSHIP,
a California limited partnership

By: PALM DESERT DEVELOPMENT
COMPANY, its Administrative General Partner

By: _____
    Name: _____
    Title: _____

OPTIONEE:

PALM DESERT DEVELOPMENT COMPANY,
a California corporation

By: _____
    Name: _____
    Title: _____

HCA:

HOUSING CORPORATION OF AMERICA,
a Utah non-profit corporation

By: *[signature]*
    Name: Ronald H Olson
    Title: President

5215/60851-045 LALIB1/511162

92


# EXHIBIT A

## LEGAL DESCRIPTION

EXHIBIT "A"

## DESCRIPTION OF PROPERTY

THE LAND REFERRED TO IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE, CITY OF COACHELLA AND IS DESCRIBED AS FOLLOWS:

THE EASTERLY 100 FEET AND THE SOUTHERLY 342 FEET OF THE FOLLOWING DESCRIBED PROPERTY:

THAT PORTION OF LOT 2 OF THE COACHELLA LAND AND WATER COMPANY OF SECTION 7, TOWNSHIP 6 SOUTH, RANGE 8 EAST, SAN BERNARDINO BASE AND MERIDIAN, AS SHOWN BY MAP ON FILE IN BOOK 4 PAGE 53 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEAST CORNER OF SAID LOT 2;

THENCE WEST, ON THE SOUTH LINE OF SAID LOT 2, 260 FEET TO THE SOUTHEAST CORNER OF THE PROPERTY ACQUIRED BY THE COACHELLA SCHOOL DISTRICT BY DEED RECORDED MARCH 8, 1963 AS INSTRUMENT NO. 30757 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

THENCE NORTH, ON THE EAST LINE OF SAID SCHOOL DISTRICT PARCEL, 660 FEET TO THE NORTHEAST CORNER THEREOF;

THENCE WEST, ON THE NORTH LINE OF SAID SCHOOL DISTRICT PARCEL, 660 FEET, MORE OR LESS, TO THE NORTHWEST CORNER OF SAID SCHOOL PARCEL AND THE TRUE POINT TO BEGINNING;

THENCE SOUTH, ON THE WEST LINE OF SAID SCHOOL DISTRICT PARCEL, TO THE SOUTH LINE OF SAID LOT 2;

THENCE WEST, ON THE SOUTH LINE OF LOT 2, TO THE SOUTHWEST CORNER THEREOF;

THENCE NORTH, ON THE WEST LINE OF SAID LOT 2, TO THE NORTHWEST CORNER THEREOF;

THENCE EAST, ON THE NORTH LINE OF SAID LOT 2, 399 FEET, MORE OR LESS, TO A POINT DISTANT 920 FEET FROM THE NORTHEAST CORNER OF SAID LOT 2;

THENCE SOUTH, TO THE TRUE POINT OF BEGINNING;

EXCEPTING THEREFROM THE NORTH 30 FEET THEREOF FOR ROAD PURPOSES;

ALSO EXCEPTING THE WESTERLY 44 FEET THEREOF FOR STREET AND PUBLIC UTILITY PURPOSES AS PER INSTRUMENT NO. 520957, RECORDED DECEMBER 20, 2000, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.