UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS] Order Regarding Plaintiffs/Counter-Defendants' Motion for Partial Summary Judgment [108]**

Plaintiffs/Counter-Defendants Centerline Housing Partnership I, L.P. – Series 2, f/k/a Related Capital Housing Partnership I, L.P. – Series 2 ("Centerline"), RCHP SLP I L.P. – Series 2 ("RCHP") (together with Centerline, the "Limited Partners") and Alden Torch Financial, LLC ("Alden Torch") (together with the Limited Partners, "Plaintiffs/Counter-Defendants") move for partial summary judgment. Dkt. 108. Defendants/Counterclaimants Palm communities, f/k/a Palm Desert Development Company ("Palm") and Housing Corporation of America ("HCA") (collectively, the "General Partners") oppose the motion. Dkt. 111. The General Partners filed a reply. Dkt. 112.

After the Court posted its tentative order, the General Partners filed a request for hearing. Req., Dkt. 121. At the Court's request, Plaintiffs/Counter-Defendants filed a response. Resp., Dkt. 123. The Court considered the arguments raised by both parties and finds that oral argument would not be helpful in this matter. See Fed. R. Civ. P. 78; L.R. 7-15.

For the following reasons, the Court **GRANTS** the motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

## I. BACKGROUND

### A. Factual Background

#### 1. The Partnership

This matter involves the Fredrick and 52 II L.P. (the "Partnership"). The Partnership includes Palm as the Administrative General Partner, HCA as the Managing General Partner of the Partnership, Centerline as the Investor Limited Partner, and RCHP as the Special Limited Partner. Defendants/Counterclaimants' Statement of Genuine Disputes of Material Fact ("SDF"), Dkt. 111-1, ¶¶ 1–4. Centerline's affiliate and predecessor-in-interest, RCC Credit Facility, LLC, and RCHP's affiliate and predecessor-in-interest, Related Direct SLP LLC, were originally admitted to the Partnership as the Investor Limited Partner and Special Limited Partner, respectively. Id. ¶¶ 5–6. Alden Torch indirectly owns and manages Centerline and RCHP. Id. ¶ 7; Plaintiffs'/Counter-Defendants' Response to Defendants/Counterclaimants' Statement of Additional Facts ("RSAF"), Dkt. 112-1, ¶¶ 93–96.

The Partnership owns a 72-unit apartment complex in Coachella, California known as Orchard Villas II (the "Property"). SDF ¶ 10. The Property shares amenities with Orchard Villas I, an adjoining property. Id. ¶ 11. Centerline contributed approximately $7.5 million in capital. Id. ¶ 12. The Limited Partners have a 99.99% equity interest in the Partnership. Id. ¶ 13. The General Partners are responsible for the management and operation of the Property. Id. ¶ 14. The Limited Partners are entitled to distributions of proceeds from a sale or refinance of the property in accordance with § 9.2.B of the LPA and any cash flow generated from the operation of the Property in accordance with § 9.2.A. Id. ¶¶ 15–16. Section 4.3 of the Partnership's LPA provides that "[t]he General Partner may modify, refinance or repay the Mortgage . . . provided, however, that the terms of any such modification, refinancing or repayment must receive the Consent of the Special Limited Partner (which consent shall not be unreasonably withheld or delayed) before such transaction shall be binding on the Partnership." Id. ¶ 17.

#### 2. The Right of First Refusal

Palm, HCA, and the Partnership are parties to an "Option Agreement and Right of First Refusal" (the "ROFR Agreement") that grants Palm a unilateral option to purchase

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

the purchase the Property at a price that cannot be less than its fair market value. Id. ¶ 22. The LPA and ROFR Agreement grant non-profit HCA a right of first refusal (the "Right of First Refusal") to purchase the Property at a below-market price permitted by Section 42(i)(7) of the Internal Revenue Code following the end of the Compliance Period, but only if the Partnership "shall desire to accept a bona fide offer from an unrelated third party to purchase the Property" from the Partnership. Id. ¶ 23. The purchase price for the Property pursuant to HCA's Right of First Refusal is millions of dollars less than the Property's fair market value. Id. ¶ 24.

The General Partners entered into an "Agreement of General Partners" ("AGP") on February 1, 2002 and the LPA on March 1, 2002. Id. ¶ 26. The AGP gives Palm the right to force HCA to exercise its below-market Right of First Refusal under the ROFR Agreement and then to sell the Property to Palm for $15,000 plus costs. Id. ¶ 28 (citing Pettit Decl., Ex. T (AGP), Dkt. 108-27, § 11). The AGP also requires that any transfer of the Property following HCA's exercise of its Right of First Refusal be accomplished in a manner that has no "reasonable and independently verifiable material adverse impact" on Palm, HCA, the Partnership, or the Property. Id.

By late 2020, the General Partners "were ready to move forward with triggering HCA's [Right of First Refusal]." Id. ¶ 30. Palm's November 16, 2020 internal meeting agenda states that Palm's "strategy" was to "[e]xercise ROFR and then offer to buy Phase I," and that Palm "[n]eed[ed] to get an offer from Greystone," and would [f]ollow up with Greystone to make an offer." Id. ¶ 31. On November 23, 2020, Greystone sent an email to Palm's President, Danavon Horn, stating that Greystone was "not certain providing an unsolicited offer on Phase II helps your cause," and that Greystone had "fairly extensive dealings with [Alden Torch] . . . They know how we operate and unsolicited offers are not our normal course of business." Id. ¶ 32. Palm's December 7, 2020 internal meeting agenda states, "Greystone will not provide an offer." Id. ¶ 33.

On December 8, 2020, Palm employee Mitch Slagerman sent an email to HCA representative Carol Cromar about "the possibility of enacting a Right of First Refusal (ROFR)" as a "tactic to obtain site control of the [Property]." Id. ¶ 34; Pettit Decl., Ex. W (Dec. 8, 2020 email). Palm provided HCA an agenda for a telephonic conference on December 15, 2020 to "Discuss the Possibility of Enacting the Right of First Refusal (ROFR)" and listed as "next steps": "[a] 3rd party bona fide offer will be submitted to the partnership for Orchard Villas II" and "HCA will exercise its ROFR to purchase Orchard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-CV-00107-JVS (JDEx)                      Date  January 12, 2022

Title  <u>Centerline Housing Partnership v. Palm Communities</u>

Villas for debt plus taxes." <u>Id.</u> ¶ 35; Pettit Decl., Ex. Y (Dec. 15, 2020 Agenda).

On December 17, 2020, Horn spoke with Mauricio Rivero on behalf of Affordable Housing for California Communities ("AHCC"), a potential buyer. <u>Id.</u> ¶ 36. Five days later, Rivero submitted separate offers on behalf of AHCC to purchase Orchard Villas I for $5.3 million and the Property for $5.0 million. <u>Id.</u> ¶ 37. The next day, Palm employee Erik Halter sent and email to Palm's outside consultant, Tony Petropulos, stating that "HCA has concerns and we're not sure they'll go along with our plan (and honor the terms of our GP Agreement)." <u>Id.</u> ¶ 38. On December 29, 2020, Palm asked Mr. Rivero for additional time to respond to the purchase offers. <u>Id.</u> ¶ 39.

On January 8, 2021, AHCC's principal, Ulysses Lepe, left a voicemail for Horn stating that he wanted to "make the best offer possible but [] had a couple questions[.]" <u>Id.</u> ¶ 40. On January 11, 2021, Lepe had Rivero increase the offers to purchase Orchard Villas I and II by $100,000 each. <u>Id.</u> ¶ 41. That same day, Mr. Rivero emailed Palm the revised offers and stated that AHCC was "still open to changing the 'Sales Price' if you would be willing to let us know what is the price you are looking for??? Please call me so we may discuss the [sale price]." <u>Id.</u> ¶ 43; Pettit Decl., Ex. JJ (Jan. 11, 2020 email). AHCC's offer was devised by Lepe following his standard due diligence. RSAF ¶ 123. Palm never responded to AHCC"s invitations to make a counteroffer. SDF ¶ 45.

Also on January 11, 2021, after Palm received AHCC's revised offer, Palm sent a letter to HCA stating that the Partnership had "received, and desires to accept, a bona fide offer from an unrelated third party to purchase the Property," and that HCA's Right of First Refusal had been triggered as a result. <u>Id.</u> ¶ 46. Palm had prepared its notice letter to HCA "ahead of time" and had been awaiting AHCC's revised offer. <u>Id.</u> ¶ 47.

Palm expressed a desire to accept the offer from AHCC on behalf of the Partnership in accordance with its authority under the LPA and pursuant to the ROFR agreement. <u>Id.</u> ¶ 51. Palm did not express a "desire to accept" AHCC's offer to purchase the related property, Orchard Villas I. <u>Id.</u> ¶ 52. On February 23, 2021, HCA sent a letter purporting to exercise its Right of First Refusal. <u>Id.</u> ¶ 53. On February 23, 2021, Horn sent an email to HCA's President Carol Cromar, stating, "[a]s previously discussed, Palm agrees to honor the [AGP] and we appreciate that HCA will honor its obligation and commitment to exercise the ROFR." <u>Id.</u> ¶ 54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

### 3. Refinancing

On December 9, 2020, Palm employee Erik Halter and Palm consultant Tony Petropulos had a phone call with Chris Blake of Alden Torch to discuss the Partnership and the Property's mortgage, which was set to mature on September 1, 2021. Id. ¶ 55. During that call, Palm's representatives asked Blake what the Limited Partners would like to do in light of the September 1, 2021 maturity, but did not present a specific refinance proposal. Id. ¶ 56. There was no discussion on that call regarding the possibility that HCA might seek to exercise its Right of First Refusal. Id. ¶ 57.

On December 16, 2020, the Limited Partners sent a letter that included two proposals to address the September 1, 2020 maturity date for the Loan, one of which was a "6-month bridge loan at an interest rate equal to 1% per annum (over 500 bps [i.e., 5%] less than the current interest rate) and with no requirement for third party reports or other closing costs." Id. ¶ 58. On January 15, 2021, Palm rejected both proposals and stated that Palm, on behalf of the Partnership, "intend[ed] to proceed with a refinancing transaction at the best rates and terms possible today." Id. ¶ 59. Palm did not indicate that it had obtained a quote or a formal term sheet from any potential lender. Id. ¶ 60 (citing Blake Decl., Ex. K (Jan. 15, 2021); Pettit Decl., Ex. R (Horn Tr. at 253:10-254:16)). On August 13, 2021, Palm's counsel sent RCHP's counsel a letter regarding a potential refinance of the Partnership's mortgage debt for up to twelve months on the current terms. Id. ¶ 62. On August 16, 2021, RCHP's counsel responded to that letter, consenting to a six-month extension on the current terms only. Id. ¶ 63.

### B. Procedural Background

On January 19, 2021, the Limited Partners filed this action for declaratory relief and requested a judicial determination that: (1) "HCA's Section 42(i)(7) ROFR has not been triggered and may not be exercised unless and until RCHP consents to a sale of the [Property]" and (2) "[Palm and HCA] cannot refinance the Partnership's debt without RCHP's prior written consent." Compl., Dkt. 1 ¶¶ 75, 85. On March 9, 2021, the General Partners asserted counterclaims for declaratory relief, Dkt. 17 ¶¶ 106–20, and a separate counterclaim against the Limited Partners for breach of the LPA and implied covenant of good faith and fair dealing, id. ¶¶ 121–38, and a counterclaim against Alden Torch for tortious interference with contract, id. ¶¶ 139–48. On April 30, 2021, the Limited

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

Partners filed an Amended Complaint asserting an additional claim against Palm for breach of fiduciary duty.  First Amended Complaint ("FAC"), Dkt. 54 ¶¶ 92–95.

On May 13, 2021, the General Partners filed a Motion for Partial Summary Judgment, arguing that the ROFR was triggered.  Dkt. 59.  The Court granted in part and denied in part that motion.  Dkt. 107.  First, the Court found that the factual record could permit a fact-finder to find that the offer was not bona fide and denied summary judgment on that issue accordingly.  Second, the Court granted partial summary judgment, declaring that the Administrative General Partner has the power under the Partnership Agreement to express, on behalf of the Partnership, a desire to sell the Apartment Complex, whereby the Special LP's consent is only necessary for a sale transaction to become binding on the Partnership.

Plaintiffs/Counter-Defendants now move for partial summary judgment with respect to the Limited Partners' claims that:

(1)   The Right of First Refusal has not been triggered;

(2)   The General Partners cannot refinance the Partnership's debt without RCHP's prior written consent; and

(3)   Palm has breached its fiduciary duties to the Limited Partners.

Plaintiffs/Counter-Defendants also move for summary judgment dismissing the General Partners' claims that:

(1)   The Right of First Refusal has been triggered;

(2)   RCHP is unreasonably withholding and delaying consent to refinance the Partnership's debt;

(3)   The Limited Partners have breached the LPA, including its implied covenant of good faith and fair dealing; and

(4)   Alden Torch has tortiously interfered with the LPA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

## II. LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.[1]

The moving party has the initial burden of establishing the absence of a material fact for trial. Anderson, 477 U.S. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

## III. DISCUSSION

---

[1] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

**A.    The Right of First Refusal**

   *1.    Requirements for Triggering the Right of First Refusal*

The parties first disagree as to when the Right of First Refusal is triggered. On one hand, the Plaintiffs/Counter-Defendants argue that the Right of First Refusal is only triggered if the Partnership actually desires to accept a qualifying offer. Mot., Dkt. 108, at 16. The General Partners, on the other hand, assert that the Partnership need only "express a desire" to accept such an offer, regardless of whether that desire is genuine. Opp'n, Dkt. 111, at 15. While the Court's previous Summary Judgment Order determined that Palm may "desire to accept" an offer on the Partnership's behalf, it did not address whether Palm actually did so here or if the Right of First Refusal was triggered accordingly. See Dkt. 107.

The Right of First Refusal Agreement states, in relevant part:

"If, at any time during the Option Term, [the Partnership] shall desire to accept a bona fide offer from an unrelated third party to purchase the Property from [the Partnership], [the Partnership] shall deliver a copy of the proposed offer to HCA and HCA shall have the right, to be exercised by written notice to [the Partnership] within forty-five (45) days after receipt of a copy of the proposed offer from [the Partnership], to respond in writing to [the Partnership] indicating that HCA desires to purchase the property for a price equal to the amount set forth in Paragraph 4(a)(i) [ROFR Agreement]."

ROFR Agreement, ¶ 5.

"Under California Law, the interpretation of contract language is a question of law." Atel Fin. Corp. v. Quaker Coal Co., 321 F.3d 924, 925–26 (9th Cir. 2003) (internal citation omitted). In California, courts must interpret contracts to give effect to the mutual intent of the parties. Bank of the West v. Super. Ct., 2 Cal. 4th 1254, 1256 (1992) (citing Cal. Civ. Code § 1636). The parties' mutual intent is determined by several factors, including: (1) the language of the contract; (2) the surrounding circumstances in which the parties entered the contract; and (3) the subsequent conduct of the parties. Morey v. Vannucci, 54 Cal. App. 4th 904, 912 (1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-CV-00107-JVS (JDEx)                    Date  January 12, 2022

Title       Centerline Housing Partnership v. Palm Communities

    California courts have established a two-step process for interpreting contracts. Curry v. Moody, 40 Cal. App. 4th 1547, 1552 (1995). First, the court must determine whether the contract is ambiguous. Id. Contracts are ambiguous when "reasonably susceptible" to different meanings. Id. At this step, the court must provisionally receive extrinsic evidence regarding the meaning of the contract. Id. If the contract is ambiguous when viewed in light of the extrinsic evidence, courts move to the second step of analysis. Id. If, however, there is no ambiguity, the court must apply the clear meaning of the contract. Bank of the West, 2 Cal. 4th at 1264 ("If contractual language is clear and explicit, it governs."). At the second step, the court must then interpret the contract. Curry, 40 Cal App. 4th at 1552. When interpreting the contract, the court admits all extrinsic evidence relevant to ambiguity. Id. If there is no such evidence, or the evidence does not raise any genuine issue of material fact, the interpretation of the contract is a matter of law. ASP Props., 133 Cal. App. 4th at 1267. But, when the extrinsic evidence is in conflict, summary judgement is not appropriate because resolution of the conflicting evidence is a question of fact. WYDA Associates v. Merner, 42 Cal. App. 4th 1702, 1710 (1996).

    Under the express terms of the ROFR Agreement, HCA's Right of First Refusal is triggered only "[i]f . . . [the Partnership] *shall desire* to accept a bona fide offer from an unrelated third party to purchase the Property." Id. (emphasis added). It is clear that the Partnership must "desire to accept" a qualifying offer to trigger the Right of First Refusal. In support of their interpretation, the General Partners present deposition testimony from Palm's President and CEO, Danavon Horn, that requiring a genuine desire to accept an offer was "never intended by the original parties" because such a requirement "would have had the effect of rendering the ROFR incapable of ever being exercised" and so "the deal [with Related] would never have been consummated." Horn Decl., ¶¶ 16–17. However, this self-serving testimony after this litigation began is insufficient to contradict the plain language of the agreement. Metro. Life Ins. Co. v. Trujillo, 2020 WL 5946079, at *3 (C.D. Cal. Oct. 7, 2020) (explaining that "there must be more than a mere scintilla of contradictory evidence to survive summary judgment."). The requirement's language is plain and clear and the General Partners have not presented sufficient evidence to suggest that it is "reasonably susceptible" to a different meaning. Thus, the provision is unambiguous, and accordingly, the Court applies the clear meaning of the contract. Coast Plaza Doctors Hosp., 83 Cal. App. 4th 677, 684 (2000) ("In interpreting an unambiguous contractual provision we are bound to give effect to the plain and ordinary meaning of the language used by the parties.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

The General Partners argue that if the Court were to interpret the Partnership and ROFR Agreements to require that Palm actually desired to accept the purchase offer to trigger the Right of First Refusal, the Court would be improperly inserting a "genuineness requirement" into the contracts. Opp'n, Dkt. 111, at 15. Instead, the General Partners assert that Palm, on behalf of the Partnership, need only "express a desire" to accept such an offer, regardless of whether that desire is genuine. Opp'n, Dkt. 111, at 15. As Plaintiffs/Counter-Defendants argue, "[w]ere this the case, a party could disavow *any* contractual term that was not accompanied with an affirmative statement that it must *actually* be performed as required under the contract." Reply, Dkt. 112, at 6. The plain language of the provision clearly requires that the Partnership "desire to accept" an offer for the Right of First Refusal to be triggered. If the Court were to accept the General Partners' argument, the provision would only require that the Partnership *receive* a bona fide offer from an unrelated third party for Palm to decide to trigger the Right of First Refusal. This would render the agreement's requirement that the Partnership "*shall desire* to accept" practically meaningless. And, if the parties had wanted the Partnership's desire to be a prerequisite, it would have to state that the Right of First Refusal was triggered only "if the Partnership *actually* shall desire to accept a bona fide offer from an unrelated third party to purchase the Property." This result would be absurd. See Roden v. AmerisourceBergen Corp., 186 Cal. App. 4th 620, 651 (2010) (explaining that courts "must interpret a contract in a manner that is reasonable and does not lead to an absurd result).

As the Court explained in its previous Summary Judgment Order, "the ROFR Agreement [] requires that the Partnership 'desire to accept' an offer to purchase the property." Dkt. 107, at 9. This means that the Partnership must actually desire to accept a purchase offer for the Right of First Refusal to be triggered.

  2.  *Whether HCA's Right of First Refusal was Triggered*

Plaintiffs/Counter-Defendants argue that, "[n]otwithstanding the Court's prior ruling that there is a factual dispute as to whether the purchase offer was bona fide (see [Dkt.] No. 107 at 12), HCA's [Right of First Refusal] has not been triggered for the independent reason that Palm did not 'desire to accept' AHCC's purchase offer on behalf of the Partnership." Mot., Dkt. 108, at 16. The Court agrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
|---|---|---|---|
| Title | Centerline Housing Partnership v. Palm Communities | | |

The evidence shows that Palm decided to trigger the Right of First Refusal before it even received an offer (SDF ¶¶ 30–31, 34–35, 38); did not negotiate with the AHCC despite its multiple invitations for a counter-offer (id. ¶¶ 40, 42–45); and did not conduct any due diligence on the third-party offer (id.). In fact, Palm's president testified in a deposition that he "expressed a desire to accept the offer from [AHCC] in order to facilitate HCA's exercise of its right of first refusal." Id. ¶ 51.

For these reasons, the Court finds that the Right of First Refusal has not been triggered because Palm did not "desire to accept" the purchase offer and GRANTS Plaintiffs/Counter-Defendants' motion for summary judgment on that issue accordingly. Thus, as to Count One of the Amended Complaint and Count I of the Counterclaim, the Court declares that the blow-market Right of First Refusal that HCA holds pursuant to Section 42(i)(7) has not been triggered.

**B.     Consent to Refinance**

*1.     Whether RCHP's Consent is Required to Refinance*

Plaintiffs/Counter-Defendants move for summary judgment declaring that Palm may not refinance without RCHP's prior written consent. The parties agree that RCHP's consent is required to refinance the partnership's debt, (SDF ¶¶ 17, 64), and the evidence supports this conclusion (Pettit Decl., Ex. R (Horn Tr.) at 48:18–49:16; LPA, § 4.3.C, Dkt. 1-1).

As to Count Two of the Amended Complaint, the Court thus GRANTS Plaintiffs/Counter-Defendants motion for summary judgment declaring that the General Partners may not refinance the Partnership's debt without RCHP's prior written consent.

*2.     Whether RCHP is "Unreasonably Withholding and Delaying Consent" to Refinance the Partnership's Debt*

The General Partners seek a declaratory judgment that RCHP is "unreasonably withholding and delaying consent to refinance" the Partnership's debt (Counterclaims ¶ 120(b)). Conversely, Plaintiffs/Counter-Defendants assert that the Limited Partners have never withheld or delayed consent to any proposed refinance and ask the Court to enter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

summary judgment in their favor. Mot., Dkt. 108, at 20. Both parties have submitted evidence supporting their respective positions.

The General Partners contend that "Alden Torch, on behalf of RCHP, blindly withheld consent to *any* refinance of the Partnership's maturing debt during 2021," despite RCHP being prohibited from unreasonably withholding or delaying such consent. Opp'n, Dkt. 111, at 23. In support of this argument, the General Partners present their designated expert's opinion that refinancing in December 2020 or the first quarter of 2021 would have provided significant benefits to the Partnership, and that thus Alden Torch's actions on behalf of RCHP were unreasonable, particularly when intended only to provide negotiating leverage. Davenport Decl., Ex. 51 (Apfelbacher Report) at § IV; Ex. 48 (Blake Dep.) at 23:11–24:5, 29:7–22, 38:9–19.

However, Palm has not presented any evidence showing that it ever sought RCHP's consent to refinance prior to asserting its counterclaim. Instead, the parties agree that Palm and Alden Torch "discuss[ed] the Partnership and the Property's mortgage" by telephone on December 9, 2020. See SDF ¶ 55. However, they also agree that during that call, Palm's representatives asked Alden Torch's representative what the Limited Partners would like to do in light of the impending maturity, but that no specific refinance proposal was presented. Id. ¶ 56. Further, the parties agree that the Limited Partners presented to Palm two proposals for addressing the impending maturity of the Loan, but that Palm rejected both. Id. ¶ 58–59. Ultimately, this evidence does not support Palm's assertion that it ever requested Alden Torch's consent to refinance prior to asserting its counterclaim.

For this reason, the Court GRANTS Plaintiffs/Counter-Defendants' motion for summary judgment as to the General Partners' request for a declaratory judgment that RCHP is "unreasonably withholding and delaying consent to refinance" the Partnership's debt (Counterclaim, Count I).

**C.      Breach of Fiduciary Duties**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

The Plaintiffs/Counter-Defendants ask this Court to grant summary judgment in their favor on their claim that Palm breached its fiduciary duties to the Limited Partners. Mot., Dkt. 108, at 18.

A claim for breach of fiduciary duty requires "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." Pierce v. Lyman, 1 Cal. App. 4th 1093, 1102 (1991). "The absence of any one of these elements is fatal to the cause of action." Id. "If the plaintiff succeeds in proving the existence of a fiduciary duty and the fiduciary's failure to perform it, then the burden shifts to the fiduciary to justify its actions." Bernstein v. Box-N-Go, LLC, No. B297863, 2021 WL 3163588, at *11 (Cal. Ct. App. July 27, 2021).

In California, partners owe fiduciary duties to the partnership and the other partners. See Cal. Corp. Code § 16404(a). Here, Palm, as the Administrative General Partner, owes the Partnership fiduciary duties of loyalty, care, and good faith and fair dealing. Alden Torch argues that Palm breached these duties by: (1) prompting AHCC to submit its Purchase Offer for the purpose of trigger HCA's ROFR; (2) failing to engage AHCC in good faith negotiations for a more favorable sales price for the Property; and (3) failing to consider whether accepting the Purchase Offer was in the best interests of the Partnership. FAC ¶ 94.

The LPA and ROFR Agreement grant Palm an option to purchase the Property at fair market value or greater. SDF ¶ 22. The agreements do not grant Palm a Right of First Refusal at the below-market price under Section 42(i)(7). SDF ¶¶ 22–25. They only grant this right to HCA, a non-profit. Id. However, the AGP between HCA and Palm granted Palm the right to acquire the Property via HCA's below-market Right of First Refusal. Id. Plaintiffs/Counter-Defendants argue that "because Palm, unlike HCA, has the authority to sell the Property under Section 5.4.A (subject to RCHP's consent to the sale terms), HCA's assignment of its Section 42(i)(7) ROFR transformed the inherently *defensive* right it was purporting to assign into an *offensive* right that Palm is attempting to use to force the Partnership to sell the Property to Palm at a price that is millions of dollars below the fair market value that Palm agreed to pay in the [] ROFR Agreement." Mot., Dkt. 108, at 18. The Court agrees.

After securing this right, Palm sought to trigger the Right of First Refusal, and thereby its right under the AGP to acquire the Property below market value, by claiming

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

that it "desired to accept" a third-party offer to purchase the Property. See SDF ¶¶ 24, 34–35. Plaintiffs/Counter-Defendants have presented evidence showing that Palm decided to trigger the Right of First Refusal before it had received an offer (id. ¶¶ 30–31, 34–35, 38); did not negotiate with the offeror despite multiple invitations for a counter-offer (id. ¶¶ 40, 42–45); and did not conduct any due diligence on the third-party offer (id.). The General Partners have not presented evidence to refute those claims. Instead, they insist that a genuine desire to accept the offer was not required to trigger the Right of First Refusal.

By means of the Agreement of General Partners, Palm devised a scheme to acquire the Property for "millions of dollars" less than the price it was entitled to under the LPA and ROFR Agreement. SDF ¶ 24. By doing so, Palm would enrich itself at the Limited Partners' expense. This is a violation of Palm's fiduciary duties of good faith, fair dealing, loyalty, and care. See SunAmerica Housing Fund 1050, 2021 WL 391420, at *6 (E.D.N.Y. 2020) (finding that general partners breached fiduciary duties to limited partners by purporting to manifest an intent to sell just to trigger a right of first refusal). Further, the Limited Partners have shown that they were injured by Palm's conduct because they were forced to protect their rights through litigation. Mot., Dkt. 108, at 19. And, if Palm proceeded to acquire the Property pursuant to the AGP, the Limited Partners would be damaged in the amount of the decrease in value of the Limited Partners' interests in the Partnership.

As to Count Three of the Amended Complaint, the Court GRANTS summary judgment in Plaintiffs/Counter-Defendants's favor on their claim that Palm breached its fiduciary duties to the Partnership on liability only.

**D. Breach of Contract**

The General Partners claim that RCHP breached the Partnership Agreement by "unreasonably refus[ing] and delay[ing] its consent to any finance of the Partnership's debt" (Counterclaims ¶ 124) and that the Limited Partners breached the Partnership Agreement by "fil[ing] the Complaint" to "prevent[] HCA's ability to close on its [Right or First Refusal]" (id. at ¶ 134–35). Plaintiffs/Counter-Defendants move for summary judgment as to the General Partners' breach of contract claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-CV-00107-JVS (JDEx) | Date | January 12, 2022 |
| Title | Centerline Housing Partnership v. Palm Communities | | |

First, Plaintiffs/Counter-Defendants argue that the General Partners' claim that RCHP breached the Partnership Agreement by withholding its consent to refinance the Partnership's debt fails because RCHP never delayed or withheld its consent to any proposed refinance. Mot., Dkt. 108, at 21. As discussed above, Palm has not shown that RCHP ever delayed or withheld its consent to any proposed refinance. Thus, this allegation cannot support a breach of contract claim.

Second, Plaintiffs/Counter-Defendants assert that the General Partners' claim that the Limited Partners breached the Partnership Agreement by initiating this litigation fails because "the Limited Partners were fully justified in filing this action to vindicate their rights under the LPA, and doing so in no way breached the LPA" and that this claim is barred by the litigation privilege. Mot., Dkt. 108, at 21.

California Civil Code § 47(b) "confers an absolute privilege to communications made as part of a judicial or quasi-judicial proceeding, defined to include any sort of truth seeking or other official proceeding." Hawran v. Hixson, 209 Cal. App. 4th 256, 282 (2012) (internal quotations omitted). This privilege generally applies to tort suits. Silberg v. Anderson, 50 Cal. 3d 205, 215 (1990), as modified (Mar. 12, 1990) (en banc). The privilege also applies to contract claims if "the agreement does not 'clearly prohibit' the challenged conduct and applying the privilege furthers the policies underlying the privilege." Crossroads Invs., L.P. v. Fed. Nat'l Mortg. Ass'n, 13 Cal. App. 5th 757, 787 (2017). The policies underlying the litigation privilege are to "afford litigants . . . the utmost freedom of access to the courts without fear of being harassed . . . [, to promote] effective judicial proceedings by encouraging open channels of communication and presentation of evidence without the external threat of liability, and [to] encourage attorneys to zealously protect their clients' interest." Id. at 788.

The General Partners' breach of contract claim is based on the Limited Partners' filing of the present lawsuit. Nothing in the LPA "clearly prohibit[s]" the Limited Partners' claims. Further, the privilege's underlying policies are furthered by applying it here because the Limited Partners brought these claims to enforce their rights under the LPA.

As to Count II of the Counterclaim, the Court finds that the Limited Partners have not breached the LPA. Accordingly, the Court GRANTS Plaintiffs/Counter-Defendants' motion for summary judgment as to the General Partners' breach of contract claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-CV-00107-JVS (JDEx)  Date  January 12, 2022

Title  Centerline Housing Partnership v. Palm Communities

**E.  Tortious Interference with Contract**

The General Partners brought a claim for tortious interference of contract against Alden Torch, claiming that Alden Torch "intentionally and unjustifiably caused the Limited Partners to breach their contractual obligations under the Partnership Agreement by, among other things, unreasonably refusing and delaying consent to refinance the Partnership's maturing, long-term debt, and by obstructing HCA's ability to close on its ripened ROFR pursuant to the terms of the ROFR Agreement."  FAC, Dkt. 17, ¶ 146.

A claim for tortious interference with contract requires:  (1) a valid and existing contract with a third party; (2) that the defendant had knowledge of the contract, (3) that the defendant committed an intentional act designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the customer relationship, and (5) damages. See Soil Retention Prods., Inc. v. Brentwood Indus., No. 3:20-CV-02435-BEN-WVG, 2021 WL 689914, at *17 (S.D. Cal. Feb. 23, 2021).  "[A]n actor's breach of contract, without more, is not 'wrongful conduct' capable of supporting a tort." Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd., 2021 WL 5231689, at *1 (Cal. Ct. App. Nov. 10, 2021) (citing Erlich v. Menezes, 21 Cal. 4th 543, 551–552 (1999); Cates Construction, Inc. v. Talbot Partners, 21 Cal. 4th 28, 54 (1999)).

Plaintiffs/Counter-Defendants argue that the General Partners's tortious interference claim against Alden Torch fails because the LPA was not breached or disrupted.  Actual breach or disruption of a contractual relationship is required for a tortious interference claim.  See Ixchel Pharma, LLC v. Biogen, Inc., 9 Cal. 5th 1130, 1141 (2020) (explaining that tortious interference with contract requires proof that "actual breach or disruption of the contractual relationship"); Soil Retention Prods., Inc., 2021 WL 689914, at *17 (same).  Because, as discussed above, the Court has found that the LPA was not breached or disrupted, the General Partners' tortious interference claim on that ground also fails.

Having found that the General Partners' tortious interference claim fails because there was no breach or disruption in the contractual relationship, the Court declines to reach Plaintiffs/Counter-Defendants' argument that the claim is also barred by the manager's privilege.  The Court GRANTS Plaintiffs/Counter-Defendants' motion for summary judgment in their favor as to the General Partners' tortious interference claim (Counterclaim, Count III).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:21-CV-00107-JVS (JDEx)     Date January 12, 2022

Title    Centerline Housing Partnership v. Palm Communities

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion.

**IT IS SO ORDERED.**